Peelle, J.,
delivered the opinion of the court:
The claimant by its contract with the defendants undertook, among other things, to “ furnish and "deliver at its own risk and expense ” at the navy-yard in Norfolk, Va., certain articles of oak lumber fireproofed under the claimants’ electric fireproofing process, as follows:
“ The quartered oak to be of the best quality, sawed fair and full to the given sizes, and well seasoned; must show some figure on one face; to be free from center or heart pith, sapwood, shakes, cross-grains, stain's, or wormholes; each thickness to average ten inches wide and twelve feet long; eight inches to nine inches wide to be clear; over nine inches wide will admit one standard knot, showing on one side only, or equal defect. * * *
“All of the above lumber to be subject to inspection by Government inspector in accordance with specifications. The contractor must notify the commandant of the yard when material is ready for inspection, such inspection to be made at the plant of the electric-fireproofing company in New York before subjecting the lumber to the fireproofing treatment.
*313 " The lumber rendered fireproof under the electric-fireproofing process shall be so impregnated with the compound that when dry and subjected to fire of six hundred degrees Fahrenheit it will remain noncombustible and absolutely safe from spread of fire from point of contact. * * *
“ Said article or articles shall, upon delivery, be subject to inspection and examination by the officer or officers authorized by the party of the second part to inspect and examine the same; and no article furnished under this contract shall be accepted until it shall have been inspected and approved by such officer or officers; and any of said articles not so approved shall be removed by the party of the first part at its own expense and within ten days after notification. * * ' *
“ Upon the presentation of the customary bills, and the proper evidence of the delivery, inspection, and acceptance of the said article or articles, and within ten days after the warrant- shall have been passed by the Secretary of the Treasury, there shall be paid to the said Electric Fireproofing Company, or to its order, by the navy paymaster for the port of New York, the sum of $74,766, for all articles delivered under this contract: Provided, however, That ho payments shall be made on any one of said classes until all the articles embraced in such class shall have been delivered and accepted, except at the option of the party of the second part.”
The claimants’ contention is that while the contr&ct prescribes the quality of oak lumber to be furnished, it also provides that the same shall be inspected at the claimants’ plant in New York by the defendants’ officers and agents before being subjected to said fireproofing treatment, and, that when so accepted and passed, the defendants, in the absence of fraud or gross error, are bound thereby.
The defendants’ contention is that the inspection of the lumber in New York was not final, though required to be made “ before subjecting the lumber to the fireproofing treatment; ” and that, therefore, after the lumber so inspected had been subjected to said treatment it was, upon delivery at the navy-yard in Norfolk, Va., again subject to inspection by the defendants’ officers as to quality as well as to whether the fireproofing process had been done according to the requirements of the specifications.
The findings show that the claimant is not a dealer in lum-' ber, but that it purchased the quartered oak for treatment by its fireproofing process upon the same being selected therefor *314 by the Government inspectors, paying therefor after said inspectors had examined and passed said lumber and reported it as acceptable for the .purpose intended.
The quartered oak offered by the claimants for inspection as a whole was good, but it was practically impossible to get quartered oak of the dimensions called for in the specifications entirely free from cracks and checks, and this fact seems to have been appreciated by the Government inspectors, as the findings show that they passed at different times material that was checked and cracked, including a considerable amount of the lumber that had been inspected August 29,1900, as aforesaid.
After the lumber had been so inspected and passed by the Government inspectors and paid for as aforesaid the claimant fireproofed the same with its electric fireproofing process, and did thereafter thoroughly air dry and kiln dry said lumber, including the lumber which on said August 29 the said inspectors wanted to reject after the same had been previously inspected by them and passed.
In fireproofing the lumber the claimants conformed to the requirements of the specifications therefor, and the same was not injured thereby, nor were the checks and cracks which existed at the time the lumber was inspected and passed materially different after treatment by said process.
In that condition the lumber was delivered at the navy-varcl in Norfolk, Va., according to the contract, and inspected, none of which was rejected by the defendants’ officers or agents because not fireproofed as required by the specifications, but they rejected the same because of defects in the lumber that existed when inspected and passed by the Government inspectors at the claimants’ plant in New York. That is to say, the larger portion of the lumber was rejected as stated by the inspector in finding v because “ badly cracked and useless for work intended,” while a small portion of the lumber, as therein stated, was rejected because “ badly shrunk and checked; figures on bill incorrect, due to ignoring inspectors’ mark.”
Some months thereafter, and after the controversy herein had arisen, another officer was sent by the defendants to reinspect the .lumber so delivered at the Norfolk Navy-Yard, *315 and this reinspection the defendants contend is competent to be considered in the case; but we think otherwise, as upon the delivery of the lumber at the navy-yard the regularly constituted officer of the defendants at that place inspected the lumber, as set forth in the findings, making no objection whatever to the electric fireproofing treatment thereof; and, that inspection not being attacked by either party for fraud or gross error, it must be held that the inspection thus made is binding on the parties.
If we are correct in this, then the case stands this wise: The lumber was inspected by the defendants’ officers at the plant of the claimants in New York and accepted as suitable foi* the purpose intended before being subjected to the fireproofing process, after which the claimants paid for the lumber so inspected and treated it with the electric fireproofing process as required by the specifications. And, neither fraud nor bad faith being imputed to either party, it must be held that the inspection and acceptance of the lumber by the defendants' officers, as aforesaid, was final as to the quality and-dimensions of the lumber.
In the case of Chicago and Santa Fe Railroad v. Price (138 U. S., 185, 195), the contract sued upon provided that in case of disputes respecting quantities and amounts, the determination of the engineer should be final and conclusive, concerning which the court said:
“ Neither party reserved the right to revise that determination for mere error or mistakes upon his part. They’chose to risk his estimates and to rely upon their right, which the law presumes they did not intend to waive, to demand that the engineer should, at all times, and in respect to every matter submitted to his determination, exercise an honest judgment, and commit no such mistakes as, under all the circumstances, would imply bad faith.”
Furthermore, in that case the court s.aid:
“ The mere incompetency or mere negligence of the division or chief engineer does not meet the requirements of the case, unless their mistakes were so gross as to imply bad faith.”
While the language of the contract in the present case does not in terms say that the inspection of the material at the *316 claimants’ plant in New York shall be final and conclusive, yet the requirement of inspection “ before subjecting the lumber to the fireproofing treatment ” ■ clearly implies that the selection of the lumber for said treatment shall be determined by the defendants’ officers and that when their judgment has once been honestly exercised and the lumber accepted as suit'able for the purpose for which it was intended, the claimant had the undoubted right to rely thereon, pay for the lumber, and proceed to fireproof it as required by the specifications. It is not bound by any inspection made thereafter as to the quality and dimensions of the lumber, in the absence of fraud or gross error, either at its plant in New York or at the navy-yard in Norfolk.
The findings show it was practically impossible to get quartered red oak of the dimensions called for “ entirely free from cracks and checks,” and for that reason the defendants’ officers at different .times “ passed material that was checked and cracked ” as acceptable under the contract, including the lumber sued for in this action.
'If the lumber was unfit for use when it reached the navy-yard at Norfolk, it was not due to the fireproofing treatment it received, nor to any negligence or act of bad faith on the part of the claimant, and it is therefore entitled to recover, according to the terms of the contract, judgment in the sum of three thousand one hundred and fifty-eight dollars and thirty-one cents ($3,158.31), which is ordered accordingly.