UNIVERSAL SPORTSWEAR, INC.
v.
UNITED STATES.
No. 411–57.

United States Court of Claims.
March 4, 1959.

**392**

Alexander Boskoff, Washington, D. C., for plaintiff.

Lawrence S. Smith, Washington, D. C., with whom was George Cochran Doub, Asst. Atty. Gen., for defendant.

LARAMORE, Judge.

This action is brought by plaintiff to recover extra costs as a result of additional work required under an amendment to the contract.

Both the plaintiff and defendant have filed motions for summary judgment, and the following facts are presented by the pleadings, affidavits, and exhibits filed:

On or about March 14, 1952, plaintiff, a New York corporation, entered into a contract with the Navy for the manufacture of approximately 9,400 wool raincoats with removable rayon cloth linings. The contract provided that the defendant was to supply the wool outer cloth and the plaintiff to supply the rayon lining and other components. For its labor and material plaintiff was to receive under the contract approximately $112,000. To insure its performance under the contract, plaintiff was required to and did post a performance bond in the penal sum of $100,000.

When plaintiff began its operations, it attempted to purchase the specified rayon cloth for the lining but found the cloth was not available on the market. Upon advising the Navy of its difficulty, the Navy advised that it would authorize a Navy supplier to sell to plaintiff the yardage required under the contract. As a result plaintiff purchased 27,000 yards from this source. Plaintiff received the cloth and so advised the Navy. Representative samples were tested by the Navy laboratory and on or about May 1, 1952, the Navy informed plaintiff that samples had been tested and found to meet all specifications.

Thereupon plaintiff began to cut the rayon and by July 1, 1952, all lining had been cut, most of the yardage sewn into garments, and shipments of completed raincoats begun. At this point the Navy orally informed plaintiff that further laboratory tests showed that some of the rayon failed to meet specifications in that it revealed excessive staining under simulated perspiration tests. Plaintiff denied any liability by reason thereof on the grounds that it had used the cloth on the Navy's previous approval. Nevertheless plaintiff advised the supplier of the Navy's position. The supplier denied that the Navy's tests were valid or accurate and had tests made by an independent laboratory which demonstrat-

ed that its rayon cloth met contractual specifications. When plaintiff was informed of the results of the recent Navy tests, a Lt. Yarborough informed plaintiff that the matter did not present a serious problem and directed the continuance of all aspects of production.

Some time in August 1952 the contracting officer informed plaintiff that he would be willing to accept a price reduction of two cents per yard as a solution. Plaintiff informed the supplier of this and a meeting between the supplier, the contracting officer, and plaintiff was had some time thereafter. At this meeting, the supplier brought with him and exhibited to the contracting officer further laboratory tests which demonstrated that its cloth met specifications. During the discussions, the suggestion of the two-cent reduction was made by the contracting officer and refused by the supplier on the ground that the offer was unreasonable in the light of the tests made by the supplier. Plaintiff offered to pay the reduction but stated it ought not be required to do so. The conference ended with no decision being reached.

Shortly thereafter the contracting officer informed plaintiff that he had decided to have arm shields inserted in all the raincoats and directed the plaintiff to proceed at once under these instructions. Plaintiff objected and advised the contracting officer that it would insist upon additional compensation for the extra work. The contracting officer assured plaintiff that it would not suffer by the change order and that it would be fairly treated.

Under date of September 16, 1952, the contracting officer issued contract Amendment No. 5, in which he directed plaintiff, pursuant to section 2, "Changes," of the provisions, to insert arm shields in all the raincoats. Amendment No. 5, which describes the work to be done, reads as follows:

"Pursuant to Section 2 'Changes' of the General Provisions, the Contract Specifications are hereby changed as follows:

"The entire quantity of garments to be furnished under the subject contract shall have an arm shield made from rayon lining and bound with a rayon binding stitched in the armpit of each garment to serve as a safeguard against staining from perspiration. The shield shall cover the area of the garment contacting the armpit of the wearer. The arm shield shall be a segment of a circle finishing approximately 8½" long and 2¾" at the center of each half. The shield shall be in two pieces securely handstitched in position.

"On page 11 under clause 'Charges for additional Government furnished property' delete 20% and substitute 5%. This change in percentage applies ONLY to the 14,322 yards of rayon binding and 700 yards of rayon lining, which shall be purchased from the Naval Supply Facility."

In accordance with the change order plaintiff began to insert arm shields in all the raincoats. In so doing, plaintiff was forced to rip apart all the completed coats.

Some time in October 1952 plaintiff was informed that it would be denied compensation for the extra work. Plaintiff objected to this and was informed that if it did not agree to do the work without compensation, the contract would be terminated for default, all raincoats would be rejected, and plaintiff would be subjected to large claims for damages. Plaintiff was further told that in the event of termination for default, the Navy would confiscate all raincoats which contained Navy material (all did); that it would have to pay the cost of such Navy material; that it would be charged with any excess in the purchase price paid to a successor contractor; and that the performance bond would be defaulted and claim made thereunder. Plaintiff protested orally and in writing to no avail, and then signed Amendment No. 6, which is dated October 27, 1952. Amendment No. 6 reads as follows:

"Contract Amendment No. 5, being inaccurate in its statement, is

hereby withdrawn. In lieu thereof, subject contract is hereby amended as follows:

"The Contractor has offered for delivery garments which showed excessive staining under certain perspiration tests provided in the specifications. In order to overcome the above described deficiency, the Contractor has offered to insert arm shields in the garments. This is acceptable to the Government. Accordingly, pursuant to Section 5, 'Inspection', of the General Provisions of the contract, the Government agrees to accept hereunder garments, which the Government has a right to reject by reason of their failure to satisfy all of the perspiration tests called for in the specifications, provided that the Contractor inserts in each armpit of each garment delivered hereunder an arm shield conforming to the following specifications: The arm shield shall be made from rayon lining, bound with a rayon binding, and shall be stitched in each armpit of each garment to serve as a safeguard against staining from perspiration. The arm shield shall cover the area of the garment which contacts the armpit of the wearer. The arm shield shall be a segment of a circle finishing approximately 8½ inches long and 2¾ inches deep at the center of each half of the shield. Each shield shall be in two pieces, securely hand-stitched in position. There will be no change in price as a result of this Amendment."

Plaintiff not only contends that Amendment No. 6 was signed under duress, but that the amendment wilfully misrepresented facts in stating that it (plaintiff) offered to insert the arm shields. Plaintiff further contends that Amendment No. 6 misrepresented the facts in stating that Amendment No. 5 was "not accurate in its statement."

We have no doubt that Amendment No. 6 was signed under duress. Plaintiff was a small company, had only one contract and obviously could not afford to suffer a default termination, excess costs, and resulting action on its performance bond. Also, it is patently clear that Amendment No. 6 misrepresented the facts when it stated that plaintiff offered to insert arm shields. At all times plaintiff strenuously objected and was forced to insert the arm shields as previously stated. However, even if we cast aside Amendment No. 6 which is shown by an uncontroverted affidavit[1] to have been procured by duress, plaintiff is still faced with the contract provisions relating to "Changes," the subject of Amendment No. 5. In other words, plaintiff objected to the extra work involved in cutting and sewing in the arm shields. After insisting that it be paid for the extra work, and after being advised that it would not suffer by the change order and would be fairly treated, Amendment No. 5 was issued and signed by the plaintiff. In this posture plaintiff was not paid for the extra work involved in spite of the fact that under Amendment No. 5 and under the "Changes" article in the contract, the defendant was obligated to pay for additional work if not caused by any act of the plaintiff. In this respect we do not believe that plaintiff could be held responsible for the ordered changes. Plaintiff used the lining with complete reliance on the Navy's advice that the cloth was acceptable, as a result of its first tests. The Navy determined that the cloth met its specifications and plaintiff had a right to rely on such determination. Under such circumstances, in the absence of fraud or negligence on the part of the plaintiff, the Navy cannot be heard to complain later. Electric Fireproofing Co. v. United States, 39 Ct.Cl. 307.

However, under Clause 2 of the contract entitled "Changes," a claim for compensation pursuant to Amendment

---

[1]. In the absence of counter affidavits by defendant the court can accept as true the statements in plaintiff's affidavit.

Curtis v. United States, Ct.Cl., 168 F. Supp. 213, and cases cited therein.

No. 5 must have been asserted within 30 days of notification of the change. This plaintiff did not do, and beyond question, forcing plaintiff to insert arm shields was a "change" in the contract specifications.

Plaintiff, by its letter of October 10, 1952, acknowledged that it signed the amendments knowing of the Navy's position in the dispute that the corrections were plaintiff's responsibility to be made at plaintiff's expense. Plaintiff also made it clear in said letter that it expected to be paid for the extra work involved. The pertinent parts of the aforesaid letter read as follows:

"We were confronted with a rejection of our merchandise. The bonding Co. on our performance bond in the sum of $100,000.00 was notified. We have been in no position to resolve whether the supplier's or your tests were accurate. However, faced with financial ruin, we were obliged to agree, without actually receiving any additional compensation, to insert shields in the garments and thereby eliminate your objections.

"This process is being accomplished by us with considerable additional cost and expense, and with the loss of income from other orders and work. Our civilian production, being more or less on a seasonal basis, has been substantially affected.

"We have signed amendments to the aforesaid contract to insert shields having no real alternative to avert business disaster.

"In view of the foregoing circumstances, we are respectfully reserving any and all rights which we may have against the government to indemnify us for the losses which we have and will sustain."

Thus we are faced with the problem of whether, under the "Changes" article of the contract, plaintiff can escape the requirement that "Any claim by the contractor for adjustment under this clause must be asserted within 30 days from the date of receipt by the contractor of the notification of change," and the requirement that any disputes concerning a question of fact resulting from the change shall be appealed to the Secretary as provided by the disputes clause of the contract.

■ Failure to exhaust remedies under the contract are normally fatal to plaintiff's cause of action. United States v. Blair, 321 U.S. 730, 64 S.Ct. 820, 88 L.Ed. 1039; United States v. Joseph A. Holpuch Co., 328 U.S. 234, 66 S.Ct. 1000, 90 L.Ed. 1192. However, where there is a justifiable excuse or in the case where the appeal procedure is inadequate or unavailable, plaintiff need not pursue and exhaust his administrative remedies before resorting to the court. United States v. Joseph A. Holpuch Co., supra.

■ We think under the facts in this case plaintiff was effectively precluded from appealing because of the coerced signing of Amendment No. 6 which under its very terms was not appealable and was in effect a determination that plaintiff was obligated to bear the extra costs. This coerced admission of liability created a question of law from which plaintiff had no appeal and took from plaintiff any rights it had of appeal under Amendment No. 5. Thus by signing Amendment No. 6, plaintiff was led into a justifiable belief that it would be barred from its right of appeal under the "Changes" clause of the contract. Under these circumstances, plaintiff was not afforded an adequate administrative remedy and its suit is properly brought in this court.

■ As previously stated, we believe the Navy was bound to accept the rayon cloth, and when the Navy rejected, its action was arbitrary and in breach of the contract for which it must stand liable. Plaintiff is entitled to recover the increased costs occasioned by the insertion of arm shields not called for in the contract.

Plaintiff's motion for summary judgment is granted, and defendant's motion is denied. Plaintiff is entitled to recover

and judgment is entered to that effect. The amount of recovery will be determined pursuant to rule 38(c), 28 U.S.C.A.

It is so ordered.

JONES, Chief Judge, and MADDEN and WHITAKER, Judges, concur.