UNIVERSAL ECSCO CORPORATION
v.
The UNITED STATES.
No. 256–65.

United States Court of Claims.
Oct. 13, 1967.

Marion Edwyn Harrison, Washington, D. C., attorney of record for plaintiff, Reeves, Harrison, Sams & Revercomb, Washington, D. C., of counsel.

Edgar H. Twine, Washington, D. C., with whom was Acting Asst. Atty. Gen., Carl Eardley, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

SKELTON, Judge.

This is a contract case. The plaintiff is a Delaware Corporation with its principal place of business in California.

On or about June 20, 1960, the plaintiff entered into a contract with the United States Post Office Department to furnish and install a mechanized mail handling system in the Post Office in New Orleans for the total sum of $993,785. Several change orders issued during the period of the contract increased the amount of the contract to $1,001,810.25. The contract contained a Changes and a Disputes clause applicable to Government contracts, but did not contain Termination for Convenience or Suspension of Work clauses usually found in Government contracts.

During the performance of the work under the contract, various controversies and disputes arose between the parties. Those which were not resolved resulted in the filing of this suit. The plaintiff has set forth its claims in the various numbered paragraphs of its petition. The parties have presented the case to this court by referring to these numbered paragraphs which are paragraphs 12, 18, 19, 21, 22, and 23. We will dispose of the case by considering these claims by these numbers for the convenience of the parties and for the sake of continuity.

The defendant filed a motion for a partial summary judgment as to the claims asserted in paragraphs 12, 19, 21, and 22 of the petition. The defendant has also asserted a counterclaim in the amount of $24,000, representing alleged liquidated damages of $300 per day for 80 days' delay on the part of the plaintiff in finishing the work called for by the contract.

## I

### Claims 18 and 23—The Discount on Invoices and the Power Turn Equipment

The plaintiff alleges in paragraph 18 that the defendant was entitled to a discount of 1 percent on invoices of plaintiff which defendant paid within 20 days after they were submitted to defendant by plaintiff, but that defendant breached the contract by taking a 1 percent discount on plaintiff's invoices which it did not pay within 20 days. These wrongful discounts amounted to $3,450.67. Defendant admitted in its answer that it had taken a 1 percent discount on some invoices which it had not paid within 20 days, but does not allege the amount thereof.

In paragraph 23, the plaintiff alleges that defendant, after demand by plaintiff, has refused and continues to refuse to pay monies due plaintiff on the nonterminated portion of the contract, which is a breach of the contract. Plaintiff claims that because of such breach, defendant owes plaintiff $31,545.63 for power turn equipment engineered and installed by plaintiff. Defendant denies these allegations in its answer.

These two claims are not before us in connection with defendant's motion, except indirectly. The plaintiff contends that since these two claims will remain in this court even if we grant defendant's motion, we should braid these minor claims with the major ones involved in defendant's motion so that all of the claims could be tried in one case in this court. Plaintiff cites Universal Ecsco Corp. v. United States, 345 F.2d 586, 588, 170 Ct.Cl. 809, 813 (1965), in support of this proposition. The defendant says the Supreme Court has overruled the doctrine of the Ecsco case in this regard in United States v. Anthony Grace & Sons, Inc., 384 U.S. 424, 86 S.Ct. 1539, 16 L.Ed.2d 662 (1966). We do not deem it necessary to decide this question, as we will dispose of the claims involved in this case on a different basis. In the meantime, plaintiff's claims 18 and 23 described above

will remain before this court and will be ruled upon in due course by the court.

## II

### Claim 12—The Supplemental Agreement

The contract provided that payments would be made to plaintiff in the following manner: 25 percent when fabrication of the equipment was 50 percent complete; 25 percent when installation of the equipment was 50 percent complete; 25 percent when installation of the equipment was complete; and the remaining 25 percent upon final acceptance of the work. The facts show, however, that instead of following this method of payment, the Post Office Department paid plaintiff progress payments of 90 percent on this contract (and also on two other contracts plaintiff had for the Post Office Department) as the work progressed for about one year after the work started. In 1961 the Post Office Department changed its contracting officers. The new officers changed the method of payment to plaintiff from the 90 percent progress payments to the method set forth in the contract. This change applied to all three of plaintiff's contracts and suddenly caused plaintiff to be indebted to defendant in the sum of $413,-000. Plaintiff was unable to secure adequate lines of credit and was on the verge of bankruptcy. After considerable negotiations between the parties, the Post Office Department offered to restore the 90 percent progress payments if plaintiff would sign a supplemental agreement which included a reduction in consideration to be paid to the plaintiff in the sum of $250,000, of which $31,500 is applicable to this contract. Plaintiff had the choice of signing the agreement or defaulting on all three contracts and going out of business. It signed the agreement April 25, 1962, and finished the contracts.

The plaintiff now contends that it was forced to sign the agreement by duress and coercion on the part of the Post Office Department, and that it would not have agreed to these onerous terms if the

Post Office Department's abrupt change in its method of payment had not forced plaintiff to the brink of bankruptcy. The plaintiff avers that the agreement is without consideration, was obtained by coercion and duress, and is null and void, and by reason thereof the Post Office Department breached the contract. Plaintiff alleges that because of such breach of contract, defendant owes plaintiff $31,500. The plaintiff took no administrative action with reference to this claim, but filed its suit directly in this court.

■■ The defendant says that this claim is barred by plaintiff's failure to exhaust the administrative remedies provided in the contract, citing Frauhauf Southwest Garment Co. v. United States, 111 F.Supp. 945, 126 Ct.Cl. 51 (1953). We do not agree. The contract in the *Fruhauf* case provided for negotiating lower or higher prices (for manufactured overcoats) and also stated that a failure of the parties to agree would be appealable pursuant to the disputes clause. There is no such provision in the contract in this case. We must accept as true the allegations of plaintiff that the supplemental agreement was without consideration and was obtained by coercion and duress as against defendant's motion for summary judgment. In fact, defendant does not argue that it was not obtained by duress, but says that even if there was duress, plaintiff was required to appeal to the Post Office Board of Contract Appeals.

We cannot accept defendant's argument, because the plaintiff's claim does not "arise under" the contract but is for breach of the contract. The particular Changes provision of plaintiff's contract did not cover changes in the method of payment but rather changes in the drawings, designs, or specifications of the products to be furnished or manufactured for the Government. The Post Office Department itself did not treat the modification in the method of payment as coming under the Changes article. The alteration was inserted in a separate agreement signed by the Deputy Postmaster General, not by the contracting officer. This court has held that under such circumstances, the contractor is not required to exhaust his administrative remedies. See Universal Sportswear, Inc. v. United States, 180 F.Supp. 391, 145 Ct.Cl. 209 (1959).

■ It is well settled that breach of contract claims for unliquidated damages, such as those being asserted here, do not have to be appealed administratively, but may be sued upon in this court without complying with the administrative procedure under the disputes clause. Railroad Waterproofing Corp. v. United States, 137 F.Supp. 713, 715, 133 Ct.Cl. 911, 915–916 (1956); Anthony P. Miller, Inc. v. United States, 77 F.Supp. 209, 212, 111 Ct.Cl. 252, 330 (1948); Allied Contractors, Inc. v. United States, 124 F. Supp. 366, 369–370, 129 Ct.Cl. 400, 406–407 (1954); Commercial Cable Co. v. United States, 170 Ct.Cl. 813, 822 (1965).

Accordingly, plaintiff's breach of contract claim for unliquidated damages is properly before this court without any administrative appeal. Defendant's argument to the contrary is rejected.

### III

*Claims 19 and 21—The Cutler-Hammer Subcontract and the Deletion of the Trayed Mail Portion of the Contract*

In paragraph 19, plaintiff alleges that on or about May 12, 1961, defendant breached the contract by terminating an order to plaintiff's subcontractor, Cutler-Hammer, Inc. Since that date, plaintiff, on the account of said subcontractor, has incurred storage costs for equipment procured for the terminated portion of the contract at the rate of $370.80 per month, which amounted to $18,540 at the time this suit was filed. The plaintiff says defendant is indebted to it for these costs.

The plaintiff avers in paragraph 21 that on May 12, 1961, defendant issued a "hold" order to stop work on the trayed mail portion of the contract. On August 3, 1962, defendant cancelled such trayed mail portion of the contract. Plaintiff alleges defendant breached the contract by this action and by reason thereof there

is due to plaintiff by defendant the sum of $113,858.36.

The parties negotiated with each other until September 25, 1964, in an attempt to settle the amount of credit to which defendant was entitled as an equitable adjustment by reason of the deletion of the tray conveyor system. On that date a written agreement embodying the terms of an oral agreement of the parties made on February 12, 1964, settling the claim was sent by defendant to plaintiff. However, the plaintiff did not sign it when it learned that the defendant was going to set-off claims plaintiff owed the defendant on a Philadelphia contract against the amount due plaintiff on the instant contract.

On February 1, 1965, the contracting officer wrote plaintiff's attorney that if plaintiff did not sign the settlement agreement on the basis of the set-off terms, he could not recommend any amount for payment, nor could he recommend any payment so long as plaintiff refused to release the property at Cutler-Hammer. The plaintiff refused to sign the agreement and filed this suit on July 24, 1965, without any administrative appeal.

After this suit was filed, the contracting officer made a final written decision in a letter dated August 15, 1966, that the Government was entitled to a credit of $225,116.63 because of the deletion of the tray conveyor system from the contract. On August 19, 1966, plaintiff filed a notice of appeal from this decision to the Post Office Board of Contract Appeals. On the same day, plaintiff filed a motion with said Board to dismiss the appeal on the ground that the Board lacked jurisdiction and for the further reason that the pendency of this suit in this court precluded the Board from rendering a decision.

■ The defendant contends that the claims asserted in paragraphs 19 and 21 of plaintiff's petition are barred by plaintiff's failure to exhaust the administrative remedies provided in the contract. The plaintiff answers this argument by saying that it waited between 17 months and 4 years to file this suit, and the contracting officer waited an additional 13 months before making a final decision. It avers that by reason of these facts, there was no administrative remedy because there was no contracting officer's decision, and, consequently, no exhaustion of an administrative remedy was required. We agree with the plaintiff. See Maxan Dress Corp. v. United States, 115 F.Supp. 439, 126 Ct.Cl. 434 (1953), and cases cited therein; Karno-Smith Co. v. United States, 84 Ct.Cl. 110, 124 (1936).

■■ This court said in New York Shipbuilding Corp. v. United States, Ct. Cl., 385 F.2d 427, p. 436, decided June 9, 1967:

\* \* \* The defendant's delay was so long and so unjustified that the Government must be held to have breached its implied covenant to render a timely and appropriate decision. Cf. C. J. Langenfelder & Son, Inc. v. United States, 341 F.2d 600, 605, 169 Ct.Cl. 465, 473–474 (1965); H. B. Zachry Co. v. United States, 344 F.2d 352, 356–367, 170 Ct.Cl. 115, 122 (1965); Garod Radio Corp. v. United States, 307 F.2d 945, 946–947, 158 Ct. Cl. 596, 600 (1962); Oliver-Finnie Co. v. United States, 279 F.2d 498, 503, 150 Ct.Cl. 189, 196–197 (1960). \* \* \*

We think the same principle applies to this case. The contracting officer cannot wait indefinitely before making a decision, but must act within a reasonable time under the existing facts and circumstances.

■ There is no definite time that a contractor must wait for a contracting officer's decision. However, this court has held that nine months or more is a sufficient waiting period. Klein v. United States, 285 F.2d 778, 152 Ct.Cl. 8 (1961); Latvian State Cargo and Passenger Steamship Line v. United States, 88 F.Supp. 290, 292, 115 Ct.Cl. 811, 814 (1950). Also see Oliver-Finnie Co. v. United States, supra. In any event, the contractor should not be required to delay

the filing of his suit more than a reasonable length of time.

■ The contracting officer waited an unreasonable period of time to make a final decision. The letter of February 1, 1965, from the contracting officer was not a final decision, and, consequently, when this suit was filed, there was no decision to appeal from. We agree with the holding of this court in H. B. Zachry Co. v. United States, supra, 344 F.2d at 357, 170 Ct.Cl. at 122, when we said:

> * * * the contracting officer's refusal to issue a final decision excuses plaintiff from any duty it may have had to pursue the administrative remedies provided by the contract. * * *

■ After the plaintiff properly filed this suit, it was not required to abandon its case and proceed with an administrative appeal merely because in the meantime the contracting officer had issued a final decision. Southeastern Oil Florida, Inc. v. United States, 115 F.Supp. 198, 201, 127 Ct.Cl. 480, 485 (1953); Latvian State Steamship Line v. United States, supra; New York Shipbuilding Corp. v. United States, supra; Oliver-Finnie Co. v. United States, supra.

■ The Supreme Court has held that a contractor can bring a suit without exhausting his administrative remedy, if the remedy is inadequate or unavailable. United States v. Blair, 321 U.S. 730, 736–737, 64 S.Ct. 820, 88 L.Ed. 1039 (1944); United States v. Joseph A. Holpuch Co., 328 U.S. 234, 239–240, 66 S.Ct. 1000, 90 L.Ed. 1192 (1946); United States v. Anthony Grace & Sons, Inc., supra 384 U.S. at 429–430, 86 S.Ct. at 1542–1543. We think this rule is applicable to the plaintiff's situation here.

Plaintiff's claims are properly before this court and will be considered and decided along with the other claims to be considered by the court in accordance with this opinion.

The plaintiff alleges that the termination by the defendant of the trayed portion of the contract, being one-third of the entire contract, was a cardinal change, not authorized by the contract, and therefore a breach of the contract. We do not consider it necessary to decide this question at this time in view of our opinion already expressed regarding these claims.

## IV

### Claim 22—The Staehling Co. Subcontract

The plaintiff arranged with the Staehling Company, a subcontractor, to prepare certain layout drawings for spiral chutes which plaintiff was required to furnish under the contract. The subcontractor prepared the drawings and sent plaintiff a bill for $34,779.85 therefor. The plaintiff alleges that the drawings were never used because of defendant's termination of the trayed mail portion of the contract.

It appears that in a letter dated April 18, 1961, the Post Office Department required the mail chutes to be 36 inches wide. The plaintiff answered by a letter of April 27, 1961, by saying this was a change from 30 to 36 inches in the mail chutes, requiring extensive engineering for which plaintiff was entitled to extra pay. On March 9, 1962, plaintiff wrote the Post Office Department making a formal claim for $34,779.85 by reason of such change and requested that the Post Office Department issue a change order to the contract in favor of plaintiff in this amount. On April 29, 1964, the contracting officer wrote plaintiff a letter formally denying the claim.

The plaintiff did not file an administrative appeal from this denial of the claim by the contracting officer. It attempts to justify this failure to appeal by the following circumstances. The plaintiff says that on February 12, 1964, the parties had a meeting and agreed to discount this particular claim for the sum of $34,779.85 as a part of the general settlement of the terminated portion of the contract. In other words, this claim was to be cancelled entirely as a part of the settlement. For this reason, the pro forma denial of the claim on April 29, 1964, by the contracting officer appeared to be immaterial and without any signifi-

cance to the plaintiff. The plaintiff did not know until September 11, 1964, that the Post Office Department did not intend to honor the settlement agreement which plaintiff understood had been made by the parties. It was on this date that the Post Office Department told plaintiff it was not going to be paid. Up to this time the plaintiff had no reason to appeal. On September 11, 1964, plaintiff had no right of appeal because the 30 days for such an appeal had long since expired. The plaintiff included this claim in this suit now before us.

The defendant contends that the claim is barred by plaintiff's failure to exhaust its administrative remedies. The plaintiff says it had a justifiable reason for not doing so, which is shown by the facts set forth in the foregoing paragraphs.

It is clear that this claim arises out of and under the provisions of the contract. It is the type of claim which is ordinarily settled under the disputes clause of the contract. If administrative relief is available to the plaintiff on the claim, before plaintiff can obtain judicial relief thereon, it must first exhaust its administrative remedies. United States v. Anthony Grace & Sons, supra; Morrison-Knudsen Co. v. United States, 345 F. 2d 833, 837, 170 Ct.Cl. 757, 763 (1965); United States v. Utah Constr. & Mining Co., 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed. 2d 642 (1966); United States v. Blair, supra; United States v. Holpuch Co., supra.

However, as was pointed out by this court in Robertson Electric Co., Inc. v. United States, 176 Ct.Cl. 1287, 1301 (1966), when the above cases were decided the law was in an unsettled state and the parties to cases then pending could not know that the Supreme Court would disapprove the determination by this court of the amount of damages on contract claims for itself. It was also stated in that case that it may now be necessary to return pending cases to the administrative boards for a determination of the amount of damages due the contractor. We think this is one of those cases insofar as the claim in paragraph 22 of plaintiff's petition is concerned. We believe that under the facts and circumstances existing with reference to this claim, the ends of justice would be served by suspending proceedings thereon and allowing the plaintiff to now present its claim to the Post Office Board of Contract Appeals for its determination of the amount, if any, due plaintiff on the claim.

Defendant's motion for partial summary judgment is denied on Claims 12, 19, 21, and 22. Further proceedings on Claim 22 are suspended in order that plaintiff may present that claim to the Post Office Board of Contract Appeals for its determination of the amount, if any, due plaintiff thereon. The remainder of the case is remanded to the trial commissioner for proceedings in ordinary course.