**J. A. TERTELING & SONS, INC.**

v.

**The UNITED STATES.**

**No. 114–59.**

United States Court of Claims.

Feb. 16, 1968.

Thomas M. Gittings, Jr., Washington, D. C., attorney of record, for plaintiff. King & King, Washington, D. C., of counsel.

James F. Merow, Washington, D. C., with whom was Asst. Atty. Gen., Edwin L. Weisl, Jr., for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## OPINION

PER CURIAM:

This case was referred to Trial Commissioner Richard Arens with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 57(a). The commissioner has done so in an opinion and report filed on November 22, 1966, in which the facts necessary to the opinion are stated therein. Exceptions to the commissioner's opinion and recommended conclusion of law were taken by plaintiff by way of appeal from the adverse report and opinion of the commissioner. The case has been submitted to the court on oral argument of counsel and the briefs of the parties. The court agrees with the opinion and recommendation of the commissioner.

■ Two points not covered by the commissioner's opinion need mention. The first is the contractor's contention that there should be further proceedings "to determine whether the contracting officer actually devoted his personal and independent consideration to the decisions bearing his signature." All that plaintiff has shown is that these decisions were prepared by a subordinate of the contracting officer and were adopted by the latter without change. We do not think that this is enough of a showing to call for further inquiry into the question whether the contracting officer "put his own mind to the problems and render[ed] his own decisions." New York Shipbuilding Corp. v. United States, 385 F.2d 427, 180 Ct.Cl. 446 (1967). In the absence of further significant proof (or proffer of proof) we must assume that the contracting officer did his duty.

■ The second point is the defendant's insistence that disposition in its favor of the "changed conditions" claim necessarily disposes also of the alternate "breach" claim for misrepresentation (which the Board of Contract Appeals did not decide) and requires dismissal of that claim as well. The court rejects this argument because it is possible for a misrepresentation claim to differ from and survive a "changed conditions" claim relating to the same problems. See Potashnick v. United States, 105 F.Supp. 837, 123 Ct.Cl. 197, 218–219 (1952). We do not know whether that is so in the present instance, but the outcome should await the further proceedings on the misrepresentation count.

Since the court is in agreement with the opinion and recommendation of the commissioner, as supplemented by the preceding paragraphs, it hereby adopts the same as the basis for its judgment in this case. Therefore, on the administrative record and briefs of the parties and for the reasons stated, the court concludes that plaintiff is not entitled to recover on its claim of changed conditions, and as to that portion of its claim relating to changed conditions, its petition is dismissed.

## OPINION OF COMMISSIONER

ARENS, Commissioner:

This case arises out of a contract, for a bid price of $1,242,700, entered into by plaintiff on December 7, 1951, with defendant, acting through the Bureau of Reclamation of the Department of the In-

terior, for excavations for the power and outlet tunnels which form part of the Palisades Dam Project in Idaho.[1]

Plaintiff asserts by way of an assignment of errors that certain decisions of the Board of Contract Appeals of the Department of the Interior,[2] adverse to plaintiff's claims of changed conditions allegedly encountered in the performance of the contract, are arbitrary, capricious, not supported by substantial evidence, and are erroneous as a matter of law.[3] The sole evidence before the court is the administrative record which includes the contract documents, correspondence between the parties, numerous charts and drawings, voluminous geological reports, the extensive transcript of the Board hearings, and a sixty-six page Board opinion which is cross-referenced into other documents in the administrative record. Only those facts are herein recited which are essential for a resolution of the issues presented by plaintiff's challenge to the Board decision. Correspondingly, some facets of the recited facts are capsuled rather than detailed. The task of ferreting out and capsuling the facts of the case, in its present posture, is complicated because both the testimony before the Board and the opinion of the Board frequently refer to material in the record which is embraced within plaintiff's alternate claim for breach of contract which the Board declined to decide because of lack of jurisdiction and which is not presently before the court.

The power and outlet tunnels which plaintiff excavated under the contract run parallel, approximately 110 feet (from center lines) apart, through the left abutment of the Palisades Dam which is on the south fork of the Snake River in southeast Idaho. Both tunnels are roughly 30 feet in diameter, with the inverts or bottoms, below the grade of the river. The power tunnel, nearer the river, is some 1,200 feet in length and the outlet tunnel is some 1,500 feet in length. These tunnels were constructed simultaneously prior to the construction of the Palisades Dam which was built under another contract, and during the construction of the dam, these tunnels were used to divert the river. The Palisades Dam contractor lined the tunnels with concrete and also constructed, in addition to the dam, a spillway tunnel which plaintiff excavated as a subcontractor.

The contract provided for an assessment against plaintiff of liquidated damages of $300 per calendar day for unexcused delay beyond the completion period of 230 days and contained articles regarding disputes and changed conditions.[4] Paragraph 37 of the specifica-

1. The contract also provided for the completion of a small substation which is not herein involved.

2. IBCA–27 dated December 31, 1957.

3. In its petition plaintiff alleges alternative theories of recovery, contending first, that in constructing the power and outlet tunnels, it encountered changed conditions, and second, that defendant breached the contract by withholding information concerning conditions known to exist at the work site. The Board declined because of lack of jurisdiction to decide the breach claim. The parties agreed to submit to this court the issues pertaining to the Board decisions regarding changed conditions prior to the institution of any de novo proceedings which might be appropriate under plaintiff's theory of breach of contract.

4. ARTICLE 4. *Changed conditions.*— Should the contractor encounter, or the Government discover, during the progress of the work subsurface and/or latent conditions at the site materially differing from those shown on the drawings or indicated in the specifications, or unknown conditions of an unusual nature differing materially from those ordinarily encountered and generally recognized as inhering in work of the character provided for in the plans and specifications, the attention of the contracting officer shall be called immediately to such conditions before they are disturbed. The contracting officer shall thereupon promptly investigate the conditions, and if he finds that they do so materially differ the contract shall, with the written approval of the head of the department or his duly authorized representative, be modified to provide for any increase or decrease of cost and/or difference in time resulting from such conditions.

tions, relating to "Local Conditions," provided:

37. Records of subsurface investigations. The drawings included in these specifications show the available records of subsurface investigations for the work covered by these specifications. The Government does not represent that the available records show completely the existing conditions and does not guarantee any interpretation of these records or the correctness of any information shown on the drawings relative to geological conditions. Bidders and the contractor must assume all responsibility for deductions and conclusions which may be made as to the nature of the materials to be excavated, the difficulties of making and maintaining the required excavations, and of doing other work affected by the geology at the site of the work.

The contract documents stated that it was expected that steel supports would be required in portions of the tunnels, as determined by the contracting officer, that the amount of such supports that would be required was uncertain, but that the contractor would be entitled to no additional allowance above the unit price bid in the schedule by reason of any amount of such support being required. The contract documents also called for "Furnishing and placing permanent structural-steel tunnel supports, steel tunnel liner plates, and steel lagging" in the amount of 2,000,000 pounds.

Paragraph 51 of the specifications provided for an overbreak for deduction in the amount of $20 for each cubic yard in excavation beyond the B line of the tunnels as shown on the drawings.

Notice to proceed with the contract work was received by plaintiff on December 17, 1951, and the time for completion of the work (230 days) was thus fixed as August 3, 1952. Due to various extensions of time allowed by defendant because of excusable delays, the completion date was extended to November 25, 1952, but work under the contract was not accepted until March 16, 1953, and accordingly liquidated damages for 112 calendar days' delay, in the amount of $33,600, were assessed against plaintiff. In addition, overbreak charges in the amount of $200,304 were assessed.

On July 8, 1954, plaintiff signed a release of amounts due under the contract, but excepted claims for added costs because of changed conditions and for remission of liquidated damages and overbreak charges which had been assessed. From adverse findings of fact and decisions by the contracting officer, plaintiff made timely appeal to the Board of Contract Appeals of the Department of the Interior which, as heretofore indicated, held a hearing, limited to the issue of liability, and thereafter affirmed the findings of fact and decisions of the contracting officer.

■ The central issue in the case is whether plaintiff encountered, within the purview of the "Changed conditions" clause, either (1) "subsurface and/or latent conditions at the site materially differing from those shown on the drawings or indicated in the specifications" or (2) "unknown conditions of an unusual nature differing materially from those ordinarily encountered and generally recognized as inhering in work of the character provided for in the plans and specifications." Plaintiff's position is in essence that in the course of driving the tunnels it repeatedly encountered subsurface rock conditions materially differing from those shown on the contract drawings, and indicated by certain borings and logs, and differing from the

---

\* \* \* \* \*

ARTICLE 15. *Disputes.*—Except as otherwise specifically provided in this contract, all disputes concerning questions of fact arising under this contract shall be decided by the contracting officer subject to written appeal by the contractor within

30 days to the head of the department concerned or his duly authorized representative, whose decision shall be final and conclusive upon the parties thereto. In the meantime the contractor shall diligently proceed with the work as directed.

conditions indicated by a prebid site inspection; and that the changed conditions which plaintiff encountered were the cause of the delay, excessive overbreak, and related extra costs.

The witnesses before the Board for plaintiff were the assistant to its general manager, the general manager, the general superintendent, its project engineer, and a geology expert. Defendant's witnesses were its project construction engineer, the associate chief engineer of the Bureau of Reclamation, a regional engineer of the Bureau of Reclamation, the head of the Embedded Materials Section, Concrete Branch of the Bureau of Reclamation, and its project field engineer. Mr. Glen Dolan, the assistant to plaintiff's general manager, actively participated in plaintiff's prebid investigation and in the preparation of plaintiff's bid. At the Board hearing, Mr. Dolan testified that plaintiff's tunnel work under the contract in controversy was his "first direct contact with tunnel work," although he had considerable experience in heavy construction and building construction. Mr. William Foss, plaintiff's general manager, who also actively participated in plaintiff's prebid investigation and "helped close the bids" had extensive experience in heavy construction and tunneling. Three of defendant's witnesses had extensive experience in dam construction and in tunnel construction.

Evidence adduced by plaintiff before the Board was to the effect that plaintiff's agents made a prebid site inspection of the abutment through which the tunnels were to be driven, and that although "weathering" was observed along certain column joints of the rock, they concluded that this weathering was not of a nature to indicate that there would be unusual difficulty tunneling in the rock, and that defendant's resident agent who accompanied them, stated that the rock looked good and "tightened up" behind the portals; that plaintiff made a prebid examination of certain drawings, logs and core borings which defendant made available, and that certain of the

borings and logs of the ground near the proposed tunnels indicated good, stable rock, with a minimum of overbreak; that plaintiff based its bid on the assumption that the excess overbreak would not exceed 6% and that not more than 50% of the tunnels would require support; that it accordingly planned a "full face" operation in which it would tunnel 30 feet per day in each tunnel; that in its tunneling operations, 100% steel supports were required; that plaintiff encountered an unusual amount of unstable rock, and in a "bad ground area," consisting of some 310 feet in both tunnels, plaintiff encountered rock which was highly decomposed, shattered, and loose, with clay and mud seams; that beyond the "bad ground area" plaintiff encountered a "latent sheeting" consisting of thin layers of material, all which resulted in delay, excessive overbreak, and related extra costs.

Evidence adduced by defendant before the Board was to the effect that the prebid site observable surface condition of the abutment through which the tunnels were to be driven revealed that the rock was columnar, badly jointed, with a great number of horizontal seams, that a considerable amount of overbreak as well as clay seams should have been expected, and that shortly after the bids were opened plaintiff's general manager, who participated in plaintiff's prebid inspection, stated that he expected considerable overbreak in the upper quadrants of the tunnel; that "latent sheeting" is a usual condition in the type of rock through which the tunnels were being driven and that there was evidence of latent sheeting in certain surface exposures and in pertinent logs and drill holes which were available to plaintiff; that plaintiff's conclusions from the drill holes and logs were erroneous because they were based on only a relatively few drill holes near the proposed tunnels and disregarded a number of other relevant drill holes which were available to plaintiff in the general vicinity of the tunnels which revealed badly broken, weathered rock with sand and clay seams, indicative of the conditions which plaintiff encountered;

that the requirement in the contract documents for the furnishing and placing of steel supports in an amount sufficient for 100% tunnel support indicated that bad tunneling rock was expected; that although plaintiff did experience a greater overbreak than it expected, the amount of overbreak is to a large extent within the control of the contractor, and that plaintiff's "loose shooting" practice was responsible for a considerable amount of the excess overbreak; that the conditions which plaintiff encountered in the tunnels were not overall abnormal; and that some of plaintiff's delays were due to difficulty with its equipment.

█ The province of this court in considering the case in its present posture is, of course, to determine whether the decisions of the Board on questions of fact are final under the Wunderlich standards, and to resolve independently questions of law which are presented. River Constr. Corp. v. United States, 159 Ct.Cl. 254 (1962); Morrison-Knudsen Co. v. United States, 345 F.2d 833, 170 Ct.Cl. 757 (1965). The standard to be used in determining whether an administrative decision is supported by substantial evidence "goes to the reasonableness of what the agency did on the basis of the evidence before it　＊　＊　＊." United States v. Carlo Bianchi & Co., 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963).

This case presents a "battle of the experts" somewhat similar to that which the court, on remand from the Supreme Court, considered in Carlo Bianchi & Co. v. United States, 167 Ct.Cl. 364 (1964), cert. denied 382 U.S. 841, 86 S.Ct. 32, 15 L.Ed.2d 82 (1965). In that case the court, upon review of the administrative record to determine if the administrative conclusions were supported by substantial evidence, stated:

We have here a conflict in testimony by witnesses shown to have had enough knowledge of tunnel construction to make them competent to express conclusions as to the necessity for extension of steel supports beyond the distances called for by the contract. It

is situations such as this that call for the application of the rule that where there is substantial evidence to support varying decisions, the conclusion of the Board of Claims and Appeals of the Corps of Engineers must stand. [167 Ct.Cl. 374]

＊　＊　＊　＊　＊　＊

The purpose of the adoption of the rule of the Wunderlich Act, submitting determinations of technical disagreements between parties to government contracts to boards familiar with the subjects of such contracts, was to have determinations by experts. No charge of fraud arises in this case. The conclusion of the Board has substantial support in the record as a whole and must be upheld. ＊　＊　＊ [167 Ct.Cl. at 377]

On the basis of the foregoing guidelines, it is clear that there is substantial evidence to support the decision of the Board. This support is derived not only from the testimony of defendant's experts, including their interpretation of the prebid site conditions, the logs and borings, but from the admission by plaintiff's general manager regarding the expected overbreak, and the warning inherent in the contract requirement for sufficient steel to support the entire tunnels. It is significant that plaintiff's geology expert testified as to the importance of certain unfavorable drill hole information available to plaintiff, other than the information from the drill holes near the tunnels, relied upon by plaintiff. In a recent case, United Contractors v. United States, 368 F.2d 585, 177 Ct.Cl. 151 (1966), this court emphasized the significance of drill hole information regarding conditions in the same general area of a proposed tunnel.

In its opinion the Board noted that it did not appear that defendant's resident agent, who accompanied plaintiff's agents at their prebid site inspection, professed any knowledge superior to that of plaintiff's agents, and that his statement regarding the good appearance of the rock was merely a puff. See: National Concrete & Foundation Co. v. United States, 170 Ct.Cl. 470 (1965).

Plaintiff's complaint that the Board in its decision gave effect to the exculpatory language of the specifications at the expense of the language of the "Changed conditions" article, is without merit. (See quotation supra, of paragraph 37 of the specifications.) In *United Contractors,* supra, this court noted that broad exculpatory clauses do not relieve the defendant of liability for changed conditions as the broad language thereof would seem to indicate. In discussing the exculpatory language of the specifications in the instant case, however, the Board expressly pointed out that the conditions which plaintiff encountered "were in general substantially similar to those represented in the drawings."

It is, accordingly, concluded that the Board decision is entitled to finality and that plaintiff's claim of changed conditions must be denied.

## CONCLUSION OF LAW

On the administrative record and briefs of the parties and for the reasons stated above, the court concludes as a matter of law that plaintiff is not entitled to recover on its claim of changed conditions, and as to that portion of its claim relating to changed conditions, its petition is dismissed.