**CLEMENT BROTHERS COMPANY, Inc.**

v.

**The UNITED STATES.**

No. 204–68.

United States Court of Claims.

Dec. 12, 1969.

As Amended Jan. 9, 1970.

Overton A. Currie, Atlanta, Ga., attorney of record, for plaintiff. Smith, Currie & Hancock, Atlanta, Ga., of counsel.

George M. Beasley, III, Washington, D. C. with whom was Asst. Atty. Gen., William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR TO SUSPEND AND ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

DAVIS, Judge: *

The issue at this stage is whether plaintiff-contractor can have an adjudication of its claims in this court, as it demands, or whether there must first be a hearing before the Corps of Engineers Board of Contract Appeals, as defendant insists. The contract was with the Engineers Corps for the construction of a dam embankment and related facilities. In the course of performance, plaintiff claimed, under the Changed Conditions Clause, that it had encountered certain unexpected rock formations which were harder and more costly to remove than reasonably contemplated. The parties conferred on this matter from 1964 or 1965 until the late spring of 1968. There is a drastic difference in the two interpretations of this course of negotiation. Plaintiff asserts that the Government early and continuously admitted its liability under the contract for a changed condition, that the discussions centered on the amount by which the contract price was to be increased, and that by April 1968 plaintiff was reasonably caused to believe that it would receive at least half-a-million dollars. The defendant's view is that it admitted nothing, neither liability nor amount, but merely engaged in protracted settlement negotiations at the contractor's urging. Each side blames the other for the delay and exculpates itself. Finally, in May 1968 the defendant offered $150,-000—which it says it considered simply a settlement or compromise proposal. Plaintiff quickly responded with a rejection of this figure, and thereafter began preparations for a court suit. Before that case was filed here, plaintiff received from the contracting officer his decision, dated July 12, 1968, denying the claim entirely; this ruling was received on July 15, 1968. Meanwhile, plaintiff's attorney mailed to this court, also on July 12th, a petition instituting suit; the petition was received by the court on July 16th (one day after plaintiff received the contracting officer's decision) and was filed on that day. The case was thus commenced here on July 16th.[1]

---

* COWEN, Chief Judge, concurs in both of the opinions.

1. The case comes before us on defendant's motion for summary judgment dismissing the petition for failure to exhaust administrative remedies, or in the alternative to suspend proceedings here until completion of the administrative proceedings (see note 3, infra), and on plaintiff's motion for summary judgment on the issue of the defendant's liability (summary judgment is sought on the ground that the Government has already admitted liability).

Invoking Universal Ecsco Corps. v. United States, 385 F.2d 421, 424–426, 181 Ct.Cl. 10, 16–19 (1967), and similar decisions, the contractor urges that the Government delayed so long and so unjustifiably in issuing its contracting officer's decision (in July 1968) that it must be held to have breached its covenant to render a timely decision, with the consequence that plaintiff became immediately entitled to a court adjudication. We need not and do not decide which party, if either, bears the responsibility for the long period elapsing prior to the contracting officer's decision. Accepting plaintiff's version *arguendo*, we note first that suit was not actually commenced until after the administrative decision was made and received. In none of the cases authorizing a judicial trial because of the Government's delay was there such a decision before the case was started; in each, the commencement of litigation preceded the administrative ruling.

■ This may not be an essential precondition where the contractor has previously indicated to the Government (before the administrative decision) that it considers the delay a breach of the covenant-to-decide and is contemplating or preparing a court action. But before a court trial or court adjudication can be ordered in the first instance on a claim "under the contract", there must be, at the least, some clear expression, prior to the administrative decision, that the contractor has washed his hands, because of the delay, of the administrative process. Otherwise, the contractor would have too free an option to await the determination before claiming that the pre-decision delay was unduly long.

■ There is nothing like that kind of warning in this case. The contractor's response to the take-it-or-leave-it proposal of $150,000 (on May 7, 1968) was a 31½ page letter to the contracting officer (on May 14th), beginning with an expression of great pain at this offer, characterizing it as inconsistent with the Government's prior attitude, and labeling the action arbitrary, grossly unfair, done in bad faith, and a wanton and reckless breach of the Government's contractual obligations. The document then details in chronological order, for many pages, plaintiff's various dealings and alleged understandings with the defendant on the claim. It then goes on with an elaborate request to the Government to give an award of at least $585,-000. In this connection, some eighteen questions (each one a multiple question) are put to the contracting officer, and he is then implored, in conclusion:

Please put yourself in our shoes. Please feel for us. Please not only think about the Corps' problems, but ours. Please, also, think about the Government's debts and obligations as well as the Government's rights. Please receive, read, and study this letter as a referee, not only think about the Corps' problems, but uncommitted to see that either team wins, but determined to see that the game is played fairly, lawfully, and equitably, even though you are employed by and continually and closely associated with only one of the teams.

Please do not get mad at us. We hope neither you nor your staff receive this letter and its questions with hostility. We have continually expressed our desire to have amicable, equitable, and honorable relations with all of you. However, by believing the Government representatives and waiting on them, we are driven to the wall. We have no alternative but to report our feelings and our beliefs of where the truth and fair dealings are to be found regarding our reasonable expectations and the obligations due Clement by the Corps and the great loss and damage we have already suffered in the failure of this duty to be fully and timely performed.

We hope that this letter, most of which is simply a restatement of what has occurred, will assist you and the Government in preventing an enlargement of the damages we have already suffered and that payment of an equitable adjustment will be immediately

forthcoming. To assist in expediting the full understanding of this letter and seriousness of our questions and concern, we are enclosing fifteen copies for such distribution as you desire.

We can read this letter only as a strong plea to the contracting officer to take further action to grant the claim. We cannot read it as a breaking-off of relations or a warning that suit was in the offing. There is no real suggestion of that course in the letter.[2] The road we must therefore follow in this instance is to allow the administrative proceedings to continue.[3]

■ In count II of its petition, plaintiff has framed a breach-of-contract claim—arising out of the same occurrence—based on alleged misrepresentation by the defendant of the nature of the rock and failure to inform plaintiff. Whether or not this particular breach claim can or will survive the demand under the Changed Conditions clause (see Air-A-Plane Corp. v. United States, 408 F.2d 1030, 1038, 187 Ct.Cl. 269, 283–284, (1969); J. A. Terteling & Sons, Inc. v. United States, 390 F.2d 926, 927, 182 Ct. Cl. 691, 694 (1968)), we think it inappropriate to have it tried at this time in the court, especially since the administrative hearing on the claim "under the contract" has already been held (note 3, *supra*). See United States v. Utah

Constr. & Mining Co., 384 U.S. 394, 418–422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966).

One further thing deserves mention. Plaintiff stresses and defendant denies, that the Government effectively admitted liability under the Changed Conditions clause during the course of the discussions from 1965 to 1968. We do not now decide that issue, but leave it, at least for first decision, to the Board of Contract Appeals as part of its determination of the administrative appeal.[4]

It follows that plaintiff's motion for summary judgment cannot be granted. But we also reject the defendant's motion for summary judgment dismissing the petition as premature. Since the matter is now before the Corps of Engineers Board of Contract Appeals, it is preferable to suspend proceedings here (as defendant asks, alternatively) until the completion of the administrative process. This has been our practice in comparable circumstances. The defendant's motion to suspend is granted pursuant to the provisions of Rule 167.

NICHOLS, Judge, (concurring): *

I join in the decision of the court and in the opinion except where it is inconsistent with what follows.

Plaintiff advised defendant on May 14, 1968, that it was still waiting for an equitable adjustment. I think defendant

---

2. At one point the letter says, with regard to the plaintiff's prior history with the Government: "However, our Company has never taken an appeal to any Contract Appeal Board or sued the Government. Also, we have always been able to resolve and amicably settle every problem we have had with the Fort Worth District. All of our negotiations have always been with the Contracting Officer's representatives for changes and changed conditions. Our experience on the others, when applied to the history of this negotiation, caused us to believe with reasonable certainty that this equitable adjustment would be resolved and paid on the same basis, at the Fort Worth District level."

3. As a protective measure, the plaintiff also appealed the contracting officer's decision

to the Engineers Board of Contract Appeals. We are informed that, over the contractor's objection, the Board held its hearing in October 1969, lasting 14 days. The record has apparently not yet been completely closed, however, and of course no determination has been rendered by the Board.

4. It is unnecessary, for this reason, for the court to take any action on plaintiff's motion to file in this court a deposition of the contracting officer, bearing, among other things, on the alleged admission of liability.

* COWEN, Chief Judge, concurs in both of the foregoing opinions.

might reasonably have regarded this as a waiver of whatever breach the contracting officer had allegedly committed up to then in failing to investigate, to make findings, and to reduce his decision to writing. Yet plaintiff, only two months later, without further notice, filed its petition in this court, alleging as breaches, among others, the very same wrongs it had only just now apparently waived. If this were all, it would naturally follow that defendant might be entitled to partial summery judgment.

Defendant, however, has moved only for full summary judgment or suspension. It has left us in doubt how it took the May 14, 1968, letter. In that regard I note the contracting officer's purported decision in which he seems to acknowledge though he awarded nothing, that someone on defendant's side of the table, at one time, apparently with authority, offered $150,000 for a settlement. It seems as if defendant, after receipt of the May 14, 1968, letter, felt it had received an ultimatum and that the parties soon would be at war; consequently, it was not going to yield any territory to the adversary. There may be a question whether this kind of document is the "decision" visualized in the disputes clause. The facts of this case indicate that the Board rushed the plaintiff into a hearing contrary to its own rules, while a suit was pending here. This may detract from the validity of the Board's findings when made, at least on some aspects of the claim.

In the circumstances, I think we have fact issues, and plaintiff is entitled to show, if it can, that it did not waive any breach claims. When we have all the facts, it may still be that Universal Ecsco Corp. v. United States, 385 F.2d 421, 181 Ct.Cl. 10 (1967) is a precedent for application here. I join in the court's decision in the belief that it does not finally adjudicate anything. I agree that both motions for summary judgment should now be denied and our proceedings suspended pending a decision by the Board of Contract Appeals.