**ZIDELL EXPLORATIONS, INC.**

v.

**The UNITED STATES.**

No. 165–68.

United States Court of Claims.

June 12, 1970.

Jack H. Dunn, Portland, Or., attorney of record, for plaintiff.

Robert R. Donlan, Washington, D. C., with whom was Asst. Atty. Gen. William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## ON DEFENDANT'S MOTION AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

DAVIS, Judge.

Plaintiff Zidell Explorations, Inc. was the successful bidder, for $313,789.99, on a sale, in 1966, by the Defense Supply Agency of surplus Titan I missile equipment located near Larson Air Force Base in the State of Washington. Controversy has erupted over the defendant's requirement that Zidell turn over, and leave with, the Government certain large items (tanks, vessels or cylinders) which the contractor insists are an integral part of the lot purchased, and the Government characterizes as "Save List Items" which the sales contract called upon the purchaser to remove from place but to turn over to the Government as its property. After relinquishing the items under protest, plaintiff made a claim upon the defendant for a refund of the reasonable value of this property, alleged to be $445,500. This demand was made under Article AL of the Special Conditions of the contract:

Article AL: Withdrawal of Property After Award. Notwithstanding any other provisions of this contract to the contrary, and irrespective of the provisions of this contract relating to title to the property, the Government reserves the right to withdraw for its use any or all of the property covered by this contract, if a bonafide requirement for the property develops or exists prior to actual removal of the property from Government control. In the event of a withdrawal under this provision, the Government shall be liable only for the refund of the reasonable value of the property withdrawn.[1]

Asserting that the property involved was never sold to plaintiff, and therefore not covered by the contract, the contracting officer rejected this request and later confirmed his refusal. Plaintiff filed suit here without appealing to the Armed Services Board of Contract Appeals. Each party has moved for summary judgment.

---

1. Also invoked was Article AS:

"Article AS: Change in Contract Requirements. The Sales Contracting Officer may, at any time, by written order and with notice only to the person or firm to whom the contract was awarded, make changes in the method by or the extent to which the property is to be scrapped, mutilated, or demilitarized; the method by or the extent to which Government property is to be stripped from the subject matter of the contract (to include the addition or deletion of property to be stripped); or the disposition to be made of the stripped property. If any such change causes an increase or decrease in the contractor's cost of performance of the contract or causes an increase or decrease in the market value of the property being disposed of, an equitable adjustment shall be made in the purchase price and the contract shall be modified in writing accordingly. Any claim by the contractor for an adjustment under this clause must be asserted in writing within 30 days from the date of receipt by the contractor of the notification of change unless the Sales Contracting Officer grants a further period of time before the final date for performance under the contract. If the parties fail to agree upon the adjustment to be made, the dispute shall be determined as provided in the 'Disputes' Clause of the contract; but nothing provided in this clause shall excuse the contractor from proceeding with performance as required under the change."

The only issue we consider and decide is whether plaintiff must exhaust its administrative remedy before coming to court. The defendant is plainly right that such exhaustion is a prerequisite to suit. If the contractor's interpretation of the sales contract is correct, the disputed objects formed part of "the property covered by this contract", but the Government still had the privilege, under the explicit terms of Article AL, *supra*, to withdraw those items "for its use * * if a bonafide requirement for the property develops or exists prior to actual removal of the property from Government control." In that event, defendant "shall be liable only for the refund of the reasonable value of the property withdrawn." Plaintiff's claim letter (dated July 27, 1966) expressly recognized the Government's right under this provision, and also confirmed that the contracting officer had "certified to us that the Government has a bona fide need for the tanks which you have now directed us to deliver to the Government * * *." The letter sought the reasonable value of the withdrawn property, "as provided for under the terms of the contract."

■ This contract provision, as plaintiff ackowledged at the outset, gives it a specific contractual remedy through which it can get all the relief to which it is entitled and asks. (Its petition in this court demands only the reasonable value of the items withdrawn, in precisely the same amount ($445,500) as it sought from the contracting officer.) Under long-settled law, it must pursue and exhaust that remedy before asking a court to intervene. United States v. Blair, 321 U.S. 730, 64 S.Ct. 820, 88 L.Ed. 1039 (1944); United States v. Joseph A. Holpuch Co., 328 U.S. 234, 66 S.Ct. 1000, 90 L.Ed. 1192 (1946); Crown Coat Front Co. v. United States, 386 U.S. 503, 512, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1967); Schlesinger v. United States, 383 F.2d 1004, 1007–1008, 181 Ct.Cl. 21, 26–28 (1967); Len Company & Associates v. United States, 385 F.2d 438, 441–442, 181 Ct.Cl. 29, 36 (1967).

■ Though plaintiff did present its claim to the contracting officer under Article AL, it never appealed to the Armed Services Board of Contract Appeals. Its only excuse is the ancient and fallacious one that its claim involves solely a question of law while the "disputes" procedure is only for factual clashes. That type of reasoning has long been discarded. If relief can properly be granted under the contract, the administrative procedure must be followed, regardless of whether the dispute in the particular instance concerns issues of law, issues of fact, or both. See Len Company & Associates v. United States, *supra*, and many recent decisions of this court in which claims "under the contract" have concerned only legal questions. In this case, if plaintiff is correct as a matter of law the Board could so decide and make an award under Article AL. If, on the other hand, the defendant is right and the tanks or vessels were "Save List Items", not sold to plaintiff, then the Board can so determine and refuse relief. The situation is analogous to the "constructive change", so familiar under the standard Changes articles, whereby relief is available under the contract if the Board, on appeal, holds incorrect the contracting officer's interpretation that the challenged work is already part of the specifications or contract (and not a change). See, *e. g.*, Morrison-Knudsen Co. v. United States, 345 F.2d 833, 837 n. 2, 170 Ct.Cl. 757, 763 n. 2 (1965). The appellate remedy, within the administrative hierarchy, must therefore be exhausted, as well as the *nisi prius* stage.

■ We cannot agree with defendant, however, that plaintiff's failure to appeal bars its claim for all time. That has not been our usual practice, in recent years, where some acceptable reason is offered for the absence of an appeal. See, *e. g.*, Robertson Electric Co. v. United States, 176 Ct.Cl. 1287, 1301–1302 (1966); Universal Ecsco Corp. v. United States, 385 F.2d 421, 427, 181 Ct.Cl. 10, 20–21 (1967); Schlesinger v. United States, *supra*, 383 F.2d 1004, 1005–1006,

181 Ct.Cl. 21, 24 (1967). Especially in the past decade, when there has been much confusion among contractors (and within parts of the Government) as to the cases which properly fall "under the contract", and are therefore governed by the "disputes" procedure, we have refrained from being so rigid and inflexible as to deny contractors all opportunity for seeking administrative relief every time they have failed (before bringing suit) to pursue that remedy to its end.

In this case, there are two independent reasons why we should not foreclose the claimant entirely. The first is that the contracting officer never seems to have made the formal "final decision" which is a normal prerequisite to an appeal to the ASBCA. He first rejected the claim in a letter which explained his reasoning but did not say that it was a "final decision" or spell out the contractor's rights of appeal. Plaintiff then submitted an affidavit, and the contracting officer answered that "the submission provides no basis upon which I can alter the position stated" in his prior letter. Again, there was no statement that he had made a "final decision", or any reference to appeal rights. Plaintiff wrote still another time, and on that occasion the contracting officer's answering letter clearly indicated that no "final decision" had yet been rendered.[2]

■■ Since the Armed Services Procurement Regulations (32 CFR § 1.314 (a) (ed. of Jan. 1, 1965), now 32 CFR § 1.314(d) (ed. of Jan. 1, 1969)) expressly require the contracting officer to say in his letter of decision the equivalent of "This is the final decision of the contracting officer", as well as to detail the contractor's appeal rights, we are justified in holding, first, that no final decision has yet been issued on the claim, and, second, that plaintiff is not precluded from appealing to the ASBCA once that decision is made in correct form (as it should promptly be). It is the Government's obligation, not the contractor's to see that a proper "final decision" is rendered once a claim has been tendered.[3]

A second reason for referring the case back to the administrative process is the probable need for some factual findings. True, the basic issue turns on the interpretation of the sales contract, but it now appears that determination of that legal question could well be helped by investigation into certain subsidiary factual matters. One significant instance has already surfaced in the briefs and oral argument:—The "Save List Items" involved are Nos. 338 and 341, described in the list as "Tank, Storage", "Tank, Helium Storage", "Tank, GOX", or "Tank, Gaseous Oxygen". These are actually clusters, combinations, or assemblies of seven or eight vessels installed and joined together. The over-all issue is whether the "Save List", which designated certain numbers of those items to be retained by the Government, referred

---

2. The body of the contracting officer's letter (dated May 4, 1967) reads as follows:
"I acknowledge receipt of your letter of 26 April 1967 in connection with the claim of Zidell Explorations which arose out of Contract 01–6020–003.

"I have again reviewed the file in the light of your inquiry and could find no disputed questions of fact arising under the contract. However, in the event you find there are any such facts not previously reported to me, you should bring such matters to my attention.

"You may be assured that upon receipt of any such communication from you I shall again review the matter and if such disputed facts exist I will issue a final decision in the matter or advise you that I will not issue such a decision. You may appeal either action as indicated in Article 15 of the General Sale Terms and Conditions of the contract.

"I trust the above is responsive to your inquiry."

3. The contracting officer's last letter (note 2, *supra*) shows that he erroneously thought that he was required to issue a final decision only if there were a disputed question of fact. On the contrary, the rule is that he should render such a decision on any question arising "under the contract" and remediable "under the contract," regardless of the types of issue involved. This is necessary so that the contractor can know when to appeal, and from what date his appeal time runs.

to the individual vessels (as claimed by the plaintiff) or to the entire cluster or assembly (the defendant's position). In support of its contention, the Government relies heavily on diagrams and descriptions of these items in a contemporaneous Defense Supply Agency publication ("Aerospace Ground Equipment", Excess List Number 65–B10, dated May 6, 1965). These descriptions give the nomenclature as "Tank, Gaseous Oxygen", or "Tank, Helium Storage", in the singular, and then set forth (among other data) dimensions, weight, and unit price. Defendant maintains that the designation of "Tank" refers to the whole assembly as a unit, while the plaintiff's assertion is that that singular noun refers to each of the seven or eight vessels making up the cluster. In that connection, plaintiff tells us that the dimensions, weight, and unit price set out in the descriptions refer to the individual vessel or cylinder, not the whole entity. Defendant counters that there is nothing in the present record to support this assertion. There is, of course, nothing on this point in the scanty record now before us, but it seems obvious that the subject can be highly relevant, and is worthy of ventilation before the Board. There may well be other factual inquiries to be pursued. A return to the Board, the fact-finding tribunal, is therefore wholly appropriate, and not merely a formal obeisance to proper "disputes" procedure.

■ Although plaintiff does not make the contention, one could conceivably say, if one wished to be strictly technical, that, in view of the time which had elapsed without a proper "final decision" of the contracting officer since the claim was first presented to that official in July 1966, Zidell was justified in filing suit here in May 1968, without waiting any longer for the "final decision"—on the theory of cases like New York Shipbuilding Corp. v. United States, 385 F.2d 427, 180 Ct.Cl. 446 (1967), and Universal

Ecsco Corp. v. United States, 385 F.2d 421, 424–426, 181 Ct.Cl. 10, 16–19 (1967), that by such undue delay the Government breaches the implied covenant to render a timely and appropriate decision. See, also, Clement Bros. Co. v. United States, 190 Ct.Cl. 50, 418 F.2d 1356 (1969). On that view, the whole case could be tried here, including any subordinate factual issues. We do not follow that route because (a) plaintiff has not chosen to ask for it, and was itself somewhat laggard in failing to push the contracting officer toward a proper "final decision", and (b) the failure to render a "final decision" was formal, rather than substantial, since the contractor had promptly been made aware of the contracting officer's position on the claim. It is better, in these circumstances, to send the case back to the administrators than to hold that the Government has forfeited its contractual right to an initial administrative determination.

■■ The question remains whether to suspend proceedings here to allow the parties to pursue the administrative path or to dismiss the petition (without prejudice) so that that can be accomplished. Under the court's present policy, the petition must be dismissed, without prejudice, since it prematurely seeks only relief "under the contract," relief which is obtainable through the "disputes" procedure; the petition contains no truly separate claim for breach of contract.[4] Plaintiff will not be harmed by this nonprejudicial dismissal; limitations does not commence to run until completion of the administrative process. Crown Coat Front Co. v. United States, 386 U.S. 503, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1967).

On this basis, plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted to the extent that the petition is dismissed, without prejudice, as premature. The petition is accordingly dismissed without prejudice.

4. Where the petition includes, also, a truly separate "breach" claim, the court's policy now is to suspend proceedings, awaiting completion of the administrative phase, rather than to dismiss the petition as premature.