Sol O. SCHLESINGER, d.b.a. Ideal Uniform Cap Company

v.

The UNITED STATES.

No. 98–57.

United States Court of Claims.

Oct. 13, 1967.

Jerome Reiss, New York City, for plaintiff, Max E. Greenberg, New York City, attorney of record, Burton R. Thorman, of counsel.

Lawrence S. Smith, Washington, D.C., with whom was Acting Asst. Atty. Gen. Carl Eardley, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

COLLINS, Judge.

Plaintiff is a contractor suing for the recovery of $42,503.91—a figure which represents the aggregate of three similar claims, each arising under separate contracts. Earlier proceedings before the Armed Services Board of Contract Appeals (hereinafter the Board) resulted in the dismissal—for lack of timely appeal—of two of these claims; left standing was the contracting officer's decision recognizing plaintiff's right to the recovery of $921.40 on his third claim. Now proceeding here under an assignment of errors, plaintiff challenges the correctness of the Board's dismissal action. In response, the Government offers alternative contentions, arguing first in behalf of a rejection of all three claims and, secondly, in favor of the Board's result. In our view, the Board's decision is controlling.

Three contracts for the manufacture of service caps were awarded to plaintiff. The dates of execution were February 8, 1950,[1] March 30, 1951,[2] and May 27, 1953.[3] Final delivery under the first two contracts occurred within 1 year of the respective execution dates; final delivery on the third contract occurred in October 1954. Each contract called for numerous payments to plaintiff, and under the price-discount provision[4] (provided in each agreement), promptness in the making of such payments permitted the Government to claim a 5-percent-cost reduction. The genesis of the present suit relates to the correctness of the discounts claimed (and taken) by the Government.

Never pressed during the time of performance, plaintiff's first-voiced disagreement with the propriety of the Government's discounts appeared in the petition filed in this court on February 28, 1957. This alleged that, as to certain payments, discounts had been taken outside of the prescribed time period; plaintiff's claims were cast in terms of "breach of contract." The Government rejected the claims both in substance and in their denomination. It insisted that the disputes were susceptible to administrative relief (i. e., that the issues were within the scope of the disputes clauses); hence, it moved for summary judgment on the ground that plaintiff had failed to exhaust his administrative remedies. Additionally, it sought dismissal of the first-executed contract claim (QM 1761)

1. Contract DA–30–280 QM 1761 (hereinafter QM 1761) was with the Department of the Army for the fabrication and delivery of 500,000 service caps.

2. Contract DA–30–280 QM 13919 (hereinafter QM 13919) was with the Department of the Army for the fabrication and delivery of 181,976 service caps.

3. Contract DA–30–352–TAP–1933 (hereinafter TAP–1933) was with the Armed Services Textile and Apparel Procurement Agency for the fabrication and delivery of 240,000 service caps.

4. Contracts QM 1761 and TAP–1933 permitted the 5-percent discount if payment were made within 20 days; contract QM 13919 required payment within 15 days to qualify for the discount.

for lack of timeliness.[5] We held the matter in suspension pending the administrative disposition of other claims arising out of the same contracts.

In April 1963, argument was heard on the Government's motion for summary judgment, and on May 10, 1963, the following order was entered:

IT IS ORDERED that further proceedings, including action with regard to defendant's motion for summary judgment, be and the same are suspended to afford plaintiff opportunity for pursuit and completion of administrative remedies and relief, proceedings for which are to be instituted and completed within a reasonable time.

As directed, plaintiff submitted his dispute to the contracting officer. The latter, in response, requested that plaintiff furnish copies of the invoices that had been listed under his first two contract claims, i. e., those invoices allegedly reflecting erroneous discounts taken under contract QM 1761 (the first-executed contract) and contract QM 13919 (the second-executed contract). Plaintiff ignored the request or at least never responded to this demand. The contracting officer—aware of the previous untimely death of plaintiff's counsel—repeated his request for invoice copies. Again plaintiff did not respond. Thereafter, on May 8, 1964, the contracting officer issued two separate final decisions, the first (designated Modification No. 7) related to contract QM 1761; the second (designated Modification No. 3), to contract QM 13919. Identical in substance, each cited the absence of supporting documentation as its basis for rejecting the claim. At the same time, plaintiff was advised of his right to protest the contracting officer's determinations: each decision emphasized that an appeal, if desired, would have to be requested within 30 days. No such appeal was made.

On May 21, 1964, the contracting officer issued his findings and decision with respect to plaintiff's third and final claim. This, too, was rejected, but not for lack of documentation. Here, unlike the first two decisions, plaintiff did instrument a timely protest. The letter to this effect, dated June 22, 1964, stated:

Reference is made to your Findings of Fact and Decision of May 21 pertaining to Contract No. DA–30–352–TAP–1933 (011991–C–53).

Consider this notice that we wish to appeal this decision to the Armed Services Board of Contract Appeals.

Please acknowledge.

On July 15, 1964, and prior to plaintiff's Board hearing, the contracting officer modified the last-issued decision (that pertaining to contract TAP–1933). This revision conceded that the Government had, as claimed, taken erroneous discounts in the amount of $921.40. Upon receipt of this revision, plaintiff addressed the following letter to the Board on August 13, 1964:

In reference to my recent request for a hearing before the Board, please be advised that the Army has revised their [sic] findings of fact and decision. I wish this included in my case. Also, modification number 7 applying to contract number DA–30–280–QM–1761 (O.I. 6680) and modification number 3 applying to contract number DA–30–280–QM–13919 (O.I. 16862) be included in this matter, *as it was my understanding that because of similarity these were all considered as one case.* [Emphasis supplied.]

Due to the recent death of my attorney, * * * I am still seeking substitute counsel. Therefore, I respectfully request a ninety-day postponement for the filing of my complaint in the above matters.

As previously noted, the subsequent Board proceedings affirmed the contract-

---

5. The Government argued that since the last delivery under this contract had occurred on January 31, 1951, the filing of a petition more than 6 years after this date would clearly be untimely. Plaintiff argued against both the accuracy and the relevancy of the contract delivery date.

ing officer's decision awarding $921.40 under contract TAP–1933; with respect to the other two claims, the Board concluded that "appellant failed to timely appeal from the final decisions pertaining to Contracts Nos. QM–1761 and QM–13919 and accordingly the [Government's] Motion to Dismiss is granted and said appeals are dismissed."

At the outset, we are met once again with arguments previously raised and previously rejected. Thus, the Government, for its part, has resurrected the contention that all of plaintiff's claims now warrant dismissal because of his *initial* failure to have sought administrative relief, while plaintiff, in turn, reiterates the argument that the pursuit of administrative relief was not essential because his claims represented "breach of contract" actions. Implicit in our order of May 10, 1963 (directing plaintiff to seek administrative relief), was the rejection of each of these arguments. Neither now merits much discussion.

■ Whatever exhaustion problems may have attended plaintiff's first presentation of his claims in this court, it is certain now—in light of the administrative proceedings that were had—that such initial defects have become moot. And unless we are to ignore or term invalid both the contracting officer's decisions and the subsequent Board proceedings (points for which the Government does not argue), then clearly the matter of plaintiff's initial failure to seek administrative relief can no longer raise a legally relevant consideration.

■■ Equally precluded is plaintiff's argument that we may now assess the merits of his claims independent of their administrative resolutions—that is, that we may treat them as "breach" claims. That prerogative normally obtains only where the claim—by its basic nature— falls outside the scope of the "disputes" clause, i. e., where the controversy relates to matters which cannot be handled under one or more of the standard adjustment clauses such as the "changes" or "changed conditions" clauses. See Unit-

ed States v. Utah Constr. & Mining Co., 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966), and United States v. Anthony Grace & Sons, Inc., 384 U.S. 424, 86 S.Ct. 1539, 16 L.Ed.2d 662 (1966). Admittedly, neither of these clauses points with unerring certainty to the scope of their coverage, and disputes, such as plaintiff's (dealing with the taking of erroneous discounts), might arguably be viewed as pure breach claims. Nevertheless, we directed plaintiff to seek out administrative relief because the matter of claim denomination is a subject that is better settled in the light of accepted administrative practices than through the reflections of abstract analysis. The availability of administrative relief—evidenced by numerous board decisions entertaining claims concerning improperly taken discounts, e. g., Resolute Paper Prods. Corp., 57–2 BCA ¶ 1394 (ASBCA); Carolina Paper Mills, Inc., 58–2 BCA ¶ 1832 (ASBCA); Crown Coat Front Co., 61–2 BCA ¶ 3157 (ASBCA)—was the functional basis of our order of May 10, 1963; we reaffirm our rejection of plaintiff's "breach" argument by again pointing to the teachings of settled administrative practice. Plaintiff's claims were matters properly within the cognizance of the administrative fact-finder; such being the case, the only question now is whether the Board was wrong in rejecting them because of plaintiff's failure to timely appeal the two earlier decisions of the contracting officer.

■ Ever since United States v. Blair, 321 U.S. 730, 64 S.Ct. 820, 88 L.Ed. 1039 (1944), it has been established doctrine that literal adherence to the terms of the "disputes" clause is essential to the disposition of all questions "arising under" a standard Government contract. Typically, this clause provides for an initial resolution of contract disputes through a contracting officer's determination. Further, it affords a contractor the opportunity to challenge such determinations through the offices of an administrative (board) hearing. Fulfillment of each of these requisites is essential in order to insure judicial review;

where such compliance cannot be shown, then there exists a jurisdictional void which we are not at liberty to ignore. United States v. Joseph A. Holpuch Co., 328 U.S. 234, 66 S.Ct. 1000, 90 L.Ed. 1192 (1946). And in the same manner that the exhaustion of administrative remedies operates as a *sine qua non* of our contract jurisdiction, so also does "timeliness" in appealing a contracting officer's determination serve as the source of the administrative appeal board's jurisdiction. The view has been consistently espoused that a contracting officer's determination shall be considered final and conclusive unless an appeal is lodged within the 30-day period set out in the disputes clause. Appeals after such time cannot be entertained. Maitland Bros., 66–1 BCA ¶ 5416 (ASBCA), and authorities cited therein.

In distinct awareness of these principles, plaintiff now urges that the Board committed error in rejecting his claims for lack of timeliness. The argument is made that as a consequence of this court's order of May 10, 1963 (directing plaintiff to pursue administrative relief), his claims were merged into one cause of action which demanded but one contracting officer decision and which necessitated but one timely appeal. No authority is offered in support of this proposition, and clearly our order does not substantiate it.

The fact that we directed but one approach to all three claims (namely, the seeking of administrative relief) could no more serve to establish their merger than could the joining of these claims in one petition. Each, from the outset, was a separate claim arising out of a particular contract. And while they may have shared like factual considerations, neither that attribute nor our common treatment of them could in any way have produced a legal coalescence sufficient to insulate all claims jointly from whatever valid defenses the Government might offer against each individually. Whatever erroneous view plaintiff initially might have taken, surely the separate decisions he received from the contracting officer (each of which advised plaintiff of his right to appeal within 30 days) should have been sufficient to alert him to the fact that his claims were—from the Government's point of view—separate and distinct. Legally, plaintiff's claims can be viewed in no other light.

The further argument is made that the Board should have given heed to plaintiff's adverse circumstances by allowing a tolling of the 30-day period following the contracting officer's decision. These adverse circumstances include the death of plaintiff's attorney in December 1963 and the death of plaintiff's wife in April 1964. These unfortunate incidents may possibly have contributed to plaintiff's failure to adequately pursue his claims, but we cannot hold that the Board abused its discretion in adhering in this instance to the 30-day requirement. The required notice of appeal was a simple document, and plaintiff showed by his response to the third decision of the contracting officer, on May 21, 1964, that he knew how to compose and file such a brief notice. It is noteworthy, too, that that notice of appeal, dated June 22, 1964, did not refer in any way to the two earlier decisions which had been received less than 3 weeks before the third decision. It was not until August 13, 1964, that plaintiff indicated any intention to appeal the two earlier rulings. In these circumstances the Board had leeway to find that the 30-day provision should not be considered tolled or waived.

Based upon the foregoing considerations, it must be concluded that the action taken by the Board was not erroneous. Plaintiff's failure to timely appeal the contracting officer's decisions made those decisions final and conclusive. Plaintiff is entitled to recover the sum of $921.40 under contract TAP–1933; the balance of his claim must be rejected.

We grant the Government's motion for summary judgment with respect to the claims arising under contracts QM 1761 and QM 13919; plaintiff's cross-motion for summary judgment on these claims is denied, and that part of the petition

is dismissed. As to the claim under contract TAP–1933, the Government's motion for summary judgment is denied; plaintiff's cross-motion for summary judgment is granted; and judgment is entered for plaintiff in the sum of nine hundred twenty-one dollars and forty cents ($921.40).