AIRCO, INC.

v.

The UNITED STATES.

No. 160–73.

United States Court of Claims.

Oct. 23, 1974.

As Amended Jan. 17, 1975.

James F. Thacher, San Francisco, Cal., attorney of record, for plaintiff, Thacher, Jones, Casey & Ratcliff, San Francisco, Cal., of counsel.

Stephen Schachman, Washington, D. C., with whom was Acting Asst. Atty. Gen., Irving Jaffe, for defendant.

Before DAVIS, SKELTON and NICHOLS, Judges.

## ON DEFENDANT'S MOTION TO DISMISS THE PETITION

DAVIS, Judge.

In August 1971 the Air Force agreed to purchase from plaintiff Airco, Inc., through the Airco division which is engaged in selling industrial gases, some 4,250 pounds of propellant hydrogen (in liquid form) at a price of $30,217.50. The contract also established a rental charge of $12 per day for the contractor-furnished containers, this charge to begin on the 31st day of the Government's possession of the container. Delivery of the gas was to be made f. o. b., after receipt of a delivery schedule from the Government, to two facilities, one in Phoenix, Arizona, and the other in Saugus, California. The contract provided: "Delivery schedules may be issued at the sole option of the Government during period of performance set forth on the applicable Commitment Document." The "effective period" for the contract was stated to be August 13, 1971 through November 15, 1971. During this three-month time-span plaintiff received orders for less than 200 pounds of the hydrogen, which was delivered.

On January 28, 1972, Airco wrote the contracting officer recalling that the contract obligated defendant to purchase 4,250 pounds at the price of $30,217, but that only a small fraction of that

amount had been ordered by the end of the contract period. The letter continued:

> Inasmuch as the Government has defaulted on its obligation to purchase the quantity as stipulated in the contract, we are billing you for the balance due. The attached invoice has been prepared for the amount due of $30,091.50.

> Airco continues to hold in reserve status the two each 1000 liter liquid hydrogen dewars [containers] and with no advice to the contrary, will continue to hold these in reserve status for the Government at the agreed rental of $12 per day per container. Charges for the rental have been included in the invoice through December 31, 1971.

Next, the Government sent, on February 17, 1972, a telegram (followed by a letter to the same effect on February 24th) terminating the contract as of February 17th under its convenience-termination clause. In May 1972 plaintiff submitted a termination settlement claim, on the Defense Department form for termination settlement proposals, requesting a total of $8,962. There followed an exchange of communications and a negotiation conference, but apparently no accord was reached.

Early in December 1972 the Government wrote that the Termination Contracting Officer intended to render a unilateral determination of the amount due for the termination. Plaintiff was asked to present any further written evidence supporting its claim. In apparent response, plaintiff, toward the end of December, asked for $13,711 as "our damages for the Government's breach" of the contract, rejecting the termination notice of February 1972 as too late, and declaring that its settlement proposal (and the ensuing settlement effort)

had been submitted and carried on in an unsuccessful attempt to compromise damages for breach of contract, and not under the termination clause. This letter from Airco was followed very shortly by a unilateral determination by the contracting officer that only $503.21 was due the contractor.

Airco did not appeal to the Armed Services Board of Contract Appeals. Instead it began this suit for breach of contract, asserting (as it had in its letter of December 1972 to the contracting officer) that the Government had already committed a material breach, and the contract was therefore at an end, well before the termination notice in February 1972. Contending that the termination was valid when issued and that plaintiff has failed to exhaust its administrative remedy through appeal to the ASBCA, defendant has moved to dismiss the petition.

■ On the basis of the record we have before us on this motion to dismiss, we would have to say that the plaintiff was free, if such a move was timely made after November 15th, to declare expressly, or indicate in effect, that it considered the contract materially breached, and at an end, because of the Government's gross failure to order by November 15th the quantity of gas it undertook to buy.[1]  *Cf.* Nolan Bros. v. United States, 405 F.2d 1250, 1255 n.5, 186 Ct.Cl. 602, 609 n.5 (1969); Clement Bros. v. United States, 418 F.2d 1356, 190 Ct.Cl. 50 (1969); Northern Helex Co. v. United States, 455 F.2d 546, 197 Ct.Cl. 118 (1972); William Green Constr. Co. v. United States, 477 F.2d 930, 201 Ct.Cl. 616 (1973), cert. denied, 417 U.S. 909, 94 S.Ct. 2606, 41 L.Ed.2d 213 (1974). The question for decision is whether plaintiff actually took that course, or whether it elected, instead, to treat the contract as still viable and continuing in operation.

1. Neither side has hinted that it has anything further to present on this particular issue, but in any event we are warranted in deciding all aspects of, and all issues involved in, the defendant's motion to dismiss on the basis of the record presented to us on that motion. See also footnote 5, *infra.*

Airco's post-November 15th conduct, and its exchanges with the Government, impel us to conclude that it chose the latter route. Its first contact with the defendant after November 15th was the letter of January 28, 1972 (quoted *supra*, in pertinent part) the contents of which are inconsistent with plaintiff's current view that at that time it deemed the agreement totally breached and at an end. If that had been Airco's stand, in January 1972, it would have asked for breach damages, *i. e.* the contract price less the amount it could obtain elsewhere for the gas. Instead, it billed the Air Force for the full balance of the contract price, just as one would do if he had decided to treat the contract as continuing to subsist and remain in effect. The plain implication was that the gas would still be delivered if the Air Force ordered it.

Moreover, and very significantly, plaintiff told the defendant in the same letter that it was holding two containers for the Goverment's use "at the agreed rental of $12 per day per container", and that "[c]harges for the rental have been included in the invoice through December 31, 1971." If Airco had deemed the contract ended in the preceding November, there would have been no rental charge for December and no advice that Airco was keeping the containers "in reserve status" for the Government. The letter must be read, rather, as an express indication that plaintiff considered the contract to be still alive and operative.

When it received the defendant's termination notice, some three weeks later, Airco continued to act under and within the confines of the contract, by appearing to accept the termination as fully valid and by following the procedures established for termination claims. In May 1972, the contractor sent to the Termination Contracting Officer a settlement proposal on a printed form to be used in settlement of "a fixed price terminated contract when total charges claimed are less than $10,000." In the space asking for the "Effective Date of Termination", plaintiff inserted "2/17/72", *i.e.* the date of the Government's termination notice. The amount sought was $8,962.[2] When the contracting officer asked for justification of this claim, Airco responded with its specific answers and without any indication that it considered the termination to have been improper, ineffective, or invalid. Later, after oral conversations with the federal representatives about the amount of the claim, Airco gave, in written form, further information on the points still at issue, again without any intimation that it viewed the termination as inoperative. On the contrary, in explaining the sum it asked for return on investment, plaintiff designated "the term of the Government contract" as "one-half year"; since the contract clearly began on August 13, 1971, this must have meant that, in plaintiff's eyes at that time, the agreement ran to February 17, 1972 (the termination date)—not November 15, 1971. There is no suggestion by either side that in any of the oral conversations Airco said or implied that the termination notice came too late or was ineffective. So far as this record reveals, the first intimation of that character came with the letter of December 1972, described *supra*, after the contracting officer had revealed that he contemplated a unilateral determination.[3]

■ In this situation we hold it plain that plaintiff did not put an end to, or think that it had put an end to, the contract before the Government invoked the convenience-termination article in February 1972. In this respect the case is

2. Contrast the $30,091.50 demanded in January 1972 before the termination notice.

3. The December letter sought $13,711 "covering our damages for the Government's breach of the subject contract." This amount is to be compared with the $30,091.-50 billed in the preceding January, as well as with the $8,962 sought in the plaintiff's termination claim.

the same as Nolan Bros. v. United States, *supra*; Clement Bros. v. United States, *supra* and William Green Constr. Co. v. United States, *supra*—in each of which the contractor similarly acted to keep the agreement alive.

■ It may superficially seem that a contract which provided that all supplies should be ordered by November 15, 1971 could not be terminated on February 17, 1972. But there are two connected reasons why this easy judgment would be incorrect. The first is that this contractor chose to pursue its option to hold itself ready and willing to continue performance after November 15th despite the Government's breach (*see* Northern Helex Co. v. United States, *supra*, 455 F.2d at 51 ff, 197 Ct.Cl. at 125 ff.) and that deliberate choice kept the contract alive, since the Government was not harmed by that stance. The second ground is that the agreement provided for storage fees for the containers so long as the defendant held them, and that part of the undertaking had no stated time limit; the storage obligation, at the least remained in existence when the termination notice issued.

Thus the February termination was valid and effective, and plaintiff was required to pursue, as it did for several months, the procedure of the convenience-termination clause. *See Nolan Bros., Clement Bros.*, and *William Green Constr. Co., supra*. That process called upon Airco, after the negotiations broke down and the contracting officer issued his unilateral determination to appeal to the Armed Services Board of Contract Appeals. Its failure to do so, says the defendant, means that it is now entirely out of court and completely remediless.

■ The court has several times held, however, that, if the circumstances justify such leniency, we can send a case like this back to determine whether there should be an administrative determination, despite the absence of a timely appeal to the board. *See* Robertson Electric Co. v. United States, 176 Ct.Cl. 1287, 1301–1302 (1966); Universal Ecsco Corp. v. United States, 385 F.2d 421, 427, 181 Ct.Cl. 10, 20–21 (1967); Zidell Explorations, Inc. v. United States, 427 F.2d 735, 737–738, 192 Ct.Cl. 331, 335–336 (1970); William Green Constr. Co. v. United States, *supra*, 477 F.2d at 937, 201 Ct.Cl. at 627–28 cert. denied, 417 U.S. 909, 94 S.Ct. 2606, 41 L.Ed.2d 213 (1974); *cf.* Schlesinger v. United States, 383 F.2d 1004, 1005–1006, 181 Ct.Cl. 21, 24 (1967). These were cases, like the present one, in which the contractor mistook its remedy, suing on a breach claim when its only correct remedy was "under the contract." Some of the cases antedate Pub.L. No. 92–415, but at least the *William Green* decision came after.

■ Plaintiff has not sued "under the contract," but pursuant to our Rule 39, requiring that leave shall be "freely given when justice so requires," we can allow it to amend its petition, if it wishes, especially since the possibility of administrative disposition was raised at the oral argument and we are making no definitive decision on the plaintiff's right to such a determination. If the petition is amended within thirty (30) days, the court will be in a position to remand under Pub.L. No. 92–415. If it is not so amended, the present petition will be dismissed as failing to state a proper "breach" claim.

We think that there is enough, at the present stage, to remand to the Department of Defense to consider whether to consider a delayed appeal. We are told that Airco's local division, which handled the contract and the termination negotiations, acted without the appropriate legal advice in deciding too late to treat the matter as a "breach" claim rather than "under the contract." Though the company is obviously not an indigent, the untutored choice made by its local personnel might, or might not, be excused if they simply chose the easier path down which to press a claim which has consistently been pushed. It is clear from the course of negotiations

that plaintiff continued to seek much more than the defendant offered, and it cannot be said to have abandoned its claim at any time. It took prompt action to bring the matter to a head,[4] and, though it was wrong in believing that it could pursue its breach claim after the unilateral determination, its legal position was not altogether frivolous. On the other hand, the case is remanded without prejudice to the power of the remandee agency to refuse to reconsider it, if it finds as a fact that defendant has been substantially prejudiced by the failure of the plaintiff to exhaust its administrative remedies in the first instance, or that the plaintiff has been inexcusably negligent in properly prosecuting its claim. This is not a case in which it is now clear that leniency should be exercised.

To avoid difficulties over the correct recipient of our remand under Pub.L. No. 92–415, we remand to the Secretary of the Air Force and let him decide, through whatever agency or person he designates, whether an appeal to the ASBCA should be permitted. The agency or person selected to decide this issue should give plaintiff a full and fair opportunity to present its case for the allowance of a delayed appeal.

On these grounds, action on the defendant's motion is suspended for thirty (30) days to allow plaintiff to amend its petition to state, if it wishes, a claim "under the contract." If such an amendment is duly filed, that new claim will be remanded under Pub.L. No. 92–415, this opinion, and Rules 149–150, to the Secretary of the Air Force to determine whether or not, in his discretion, to allow a delayed appeal to the ASBCA. At the same time the claim now stated in plaintiff's petition will be dismissed on

defendant's motion which will be granted to that extent.[5] If an amendment to the petition is not duly filed, the petition will be dismissed on defendant's motion.[6]

---

4. The unilateral determination was issued on January 4, 1973, and the petition in this court was filed on May 25, 1973.

5. Since we have considered documents filed by defendant in support of its motion to dismiss, we treat the motion as one for summary judgment for failure to exhaust the administrative remedy. *See* Rule 38(b).

