SAMUEL T. ISAAC & ASSOCIATES, INC.

v.

The UNITED STATES.

No. 542–82C.

United States Claims Court.

Oct. 25, 1983.

Suzanne Caldwell, Washington, D.C., for plaintiff. Caldwell & Caldwell, P.C., of counsel.

Kenneth Oestreicher, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant. David M. Cohen, Director, and Sandra P. Spooner, Asst. Director, Washington, D.C., of counsel.

## OPINION ON PLAINTIFF'S MOTION TO DISMISS THE COUNTERCLAIM AND DEFENDANT'S CROSS–MOTION FOR PARTIAL SUMMARY JUDGMENT

PHILIP R. MILLER, Judge:

This is a suit for breach of fifteen contracts with the Government National Mortgage Association (GNMA). Plaintiff is a mortgage banker which has been in the business of issuing GNMA securities backed by pools of government guaranteed home mortgages and GNMA security guarantees. In return for its promise to service and supervise the mortgages and to make regular monthly payments of principal and interest due the security holders, plaintiff was entitled to receive a fee measured by a percentage of the proceeds.

On September 2, 1980, GNMA delivered to plaintiff a notice of default because plaintiff's August 15 check to Morgan Guaranty Trust Company of New York for $8,040.55 had been returned by plaintiff's bank on August 22 for insufficient funds, requiring GNMA to make the payment on August 29, and because there had been other previous similar incidents. Although plaintiff reimbursed GNMA, as a consequence of such default, the latter terminated and extinguished plaintiff's interest as issuer or servicer under fifteen guarantee agreements on the stated ground that—

> The continued issuance of checks to security holders that are dishonored by the banks on which they are written provides substantial indication of a change in the business status of the issuer which materially adversely affects GNMA under each of the guaranty agreements.

Plaintiff's claim against GNMA for breach of the fifteen guarantee agreements asserts the dishonored check was not in fact an indication of a material change in business status, but was a mere bank error; that GNMA made no investigation of plaintiff's business status; that GNMA failed to notify plaintiff that it was considering declaring a default and extinguishing plaintiff's rights to continue servicing its fifteen mortgage pools under the fifteen different guarantee agreements; that GNMA failed to provide plaintiff any information about prior returned checks; and that plaintiff was not allowed an opportunity to rebut the evidence against it prior to the extinguishment. Plaintiff's complaint demands damages for the seizure of plaintiff's loan port-

folio and the disruption of plaintiff's servicing function, remission to plaintiff of the balance of mortgage payments and other funds in plaintiff's custodial accounts taken over by GNMA and an accounting for those disbursed, plus other equitable relief.

In its answer defendant not only denies liability but asserts a counterclaim for plaintiff's breach of the following provision of the Guaranty Agreement:

Section 8.06 On and after the time GNMA directs a letter of extinguishment to the Issuer * * * all authority and power of the Issuer under this Agreement, whether with respect to the securities issued hereunder or the mortgages pooled hereunder or otherwise, shall terminate and expire; and without limitation, the authority of the Issuer to make withdrawals against the Custodial Account * * * shall so terminate and expire; provided that, _on request by GNMA_ and consistent therewith, _the Issuer shall continue for a reasonable time to render GNMA the fullest assistance practicable in furtherance of the orderly and due removal of the Issuer from the continuation otherwise of, this Agreement and the transactions and arrangements set forth and provided for herein._ [Underscoring supplied.]

Defendant alleges that after receipt of the extinguishment letter, plaintiff refused to cooperate with GNMA in effecting an orderly transfer of the servicing of the mortgages in the pools to a new servicer; refused to turn over records; advised mortgagors that plaintiff was still servicing their mortgages and demanded payment of mortgage installments, even though the new servicer had already advised the mortgagors that it had taken over; sent duplicate checks to security holders even though it lacked funds to make the payments; and refused to remit to the new servicer the funds it had collected as servicer after extinguishment. Defendant claims damages of $700,000 as a result of plaintiff's refusal to cooperate with GNMA in the transfer of the mortgage and security servicing. These include $250,000 in unreimbursed GNMA advances to security holders; extensive legal fees; the cost of numerous mailings to mortgagors and security holders; the cost of expert witnesses and staff time in federal district and circuit court of appeals proceedings; and loss in market value of the mortgage portfolio and servicing contracts because of plaintiff's obstructions.

■ The dispositive motions of both parties are addressed solely to the counterclaim. Plaintiff's motion to dismiss the counterclaim asserts that a proper default termination was a prerequisite to the obligation of plaintiff to assist or cooperate with GNMA, that the default termination was improper, and therefore that plaintiff had no valid obligation which it could have breached. However, to the extent that plaintiff argues that the default termination was substantively unwarranted, the argument raises questions of fact which are incompatible with summary judgment.

■ Plaintiff's further argument that the termination was procedurally defective because GNMA failed to afford it the opportunity "to confer and negotiate with respect to remedying and correcting the default through interim moratorium or other arrangements", as provided in Section 8.04, also raises questions of fact. The same section provides that such procedure need not be followed if "GNMA in its discretion determines that such course is precluded by applicable circumstances." Whether there were repeated failures by plaintiff to pay the security holders on time and whether that was a reasonably sufficient circumstance to preclude conference and negotiation is a matter remaining for trial.

■ Defendant also contends that plaintiff was in fact given a conference, albeit after the termination letter was issued, and that was sufficient to comply with Section 8.04, because if plaintiff had made an adequate showing it could have been reinstated by GNMA as issuer or servicer of the mortgage pools and securities; but plaintiff contends that the conference was inadequate because the GNMA representatives had already made up their minds against plain-

tiff. Whether the conference was in fact adequate to meet the purposes of Section 8.04 likewise requires resolution by trial.

Finally, it may well be that even if the default termination by GNMA is found to be either substantively unwarranted or procedurally defective it may avail plaintiff not at all. For under Section 8.06 of the Guaranty Agreement the issuer's obligation to render assistance to GNMA arises merely from the facts that "GNMA directs a letter of extinguishment to the Issuer" and GNMA requests assistance. It would appear that if plaintiff desired to contest the validity of the extinguishment, its remedy was by law suit against GNMA or the government and not by defiance, by disregard of the notice, by self-help, or by threats to the mortgagors that they must continue to pay the plaintiff rather than GNMA or face double liability.

Plaintiff also objects to some of the items of damage claimed by defendant. But it is unnecessary to consider them at this time, since the issue at this juncture is only whether plaintiff is entitled to judgment dismissing the counterclaim as a matter of law.

Defendant's motion for partial summary judgment on its counterclaim is likewise premature. While it may be that plaintiff's interference with GNMA's transfer of plaintiff's mortgage servicing rights constituted a breach of contract even if the default termination was improper, it is unnecessary to determine that issue at this time, since it may well be found after trial that the termination was proper. Furthermore, the determination of the propriety of the default termination may be central to the determination of defendant's right to damages on the counterclaim. For, if GNMA's extinguishment constituted a material breach of contract, the issuer may have been discharged of all further duties. The usual rule is that a material breach of contract gives the injured party the right to end the agreement. *Cities Service Helex, Inc. v. United States,* 211 Ct.Cl. 222, 234, 543 F.2d 1306, 1313 (1976); *Northern Helex Co. v. United States,* 197 Ct.Cl. 118, 125–26,

455 F.2d 546, 551 (1972); *Acme Process Equipment Co. v. United States,* 171 Ct.Cl. 324, 335, 347 F.2d 509, 515 (1965), *rev'd on other grounds,* 385 U.S. 138 (1966); *Airco, Inc. v. United States,* 205 Ct.Cl. 493, 497, 504 F.2d 1133, 1135 (1974).

Another matter remains to be considered. If the contract gave defendant the right to extinguish plaintiff's interest arbitrarily and still hold plaintiff to its promise to assist defendant in the takeover, what was the consideration for plaintiff's promise? Was the contract illusory? Would there be consideration if the GNMA's right to extinguish plaintiff's interest had to be in good faith, even if mistaken? *See Torncello and Soledad Enterprises, Inc. v. United States,* 231 Ct.Cl. ——, 681 F.2d 756 (1982), and particularly concurring opinion of Judge Nichols. Assuming the contract is not illusory, it may be that defendant is entitled merely to an offset rather than a counterclaim, since but for defendant's own action it could not have been damaged by plaintiff's interference. Neither party has adequately briefed these questions.

Finally, it does not appear that any substantial benefit would accrue from a decision on the counterclaim at this time prior to venting all the facts on the termination.

Accordingly, both plaintiff's motion to dismiss the counterclaim and defendant's cross-motion for partial summary judgment are denied.