SAMUEL T. ISAAC & ASSOCIATES, INC.

v.

The UNITED STATES.

No. 542–82C.

United States Claims Court.

July 12, 1984.

Teresa Ann Isaac, Lexington, Ky., for plaintiff.

Kenneth Oestreicher, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant. David M. Cohen, Director, and Sandra P. Spooner, Asst. Director, Washington, D.C., of counsel.

## OPINION ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT FILED JUNE 1, 1984

PHILIP R. MILLER, Judge:

In this suit Samuel T. Isaac & Associates, Inc. (STI or plaintiff) seeks damages in an unspecified amount for the improper termination by the Government National Mortgage Association (GNMA) of fifteen contracts for the servicing of mortgages and securities under GNMA's Mortgage Backed Securities Program (MBSP). Under these contracts, plaintiff issued GNMA securities backed by pools of government guaranteed home mortgages and GNMA security guarantees. Thereafter, in return for STI's collection, servicing and supervision of the mortgage obligations due from the homeowners and regular monthly payments of principal and interest due to the securities holders, plaintiff was entitled to receive fees measured by a percentage of the proceeds.

In its notice of default issued September 2, 1980, GNMA stated its basis for the termination to be that plaintiff's "continued issuance" of dishonored checks to security holders "provides substantial indication of a change in the business status of the issuer which materially adversely affects GNMA under each of the guaranty agreements." However, plaintiff complains that the dishonored check which triggered the default was not in fact an indication of a material change in business status, but was a mere bank error; that GNMA made no investigation of plaintiff's business status; that GNMA failed to notify plaintiff that it was considering declaring a default and extinguishing plaintiff's rights to continue servicing its fifteen mortgage pools under the fifteen different guarantee agreements; that GNMA failed to provide plaintiff any information about prior returned checks; and that plaintiff was not allowed an opportunity to rebut the evidence against it prior to the extinguishment. Plaintiff's complaint demands damages for the seizure of plaintiff's loan portfolio and the disruption of plaintiff's servicing function, remission to plaintiff of the balance of mortgage payments and other funds in plaintiff's custodial accounts taken over by GNMA and an accounting for those disbursed.

Defendant in turn counterclaims for $700,000 in damages for plaintiff's refusal after the termination to cooperate with GNMA in an orderly transfer of plaintiff's servicing functions, records and funds to a new servicer.

Plaintiff previously filed a motion to dismiss the counterclaim and defendant filed a cross-motion for partial summary judgment on such counterclaim. However, in an opinion filed October 25, 1983,[1] the court denied both motions on the grounds that judgment for either party would necessitate resolution of material issues of fact requiring a trial and questions of law not adequately considered in the briefs.

Defendant's current motion for partial summary judgment is addressed solely to plaintiff's complaint. Defendant alleges that, subsequent to the prior motions and opinion, Samuel T. Isaac, who controls and is plaintiff's alter ego, pleaded guilty to charges of fraud, embezzlement, obtaining money by false pretenses and similar financial crimes, and was convicted on such charges.

---

1. Reported at 3 Cl.Ct. 528.

On January 19, 1984, Isaac pleaded guilty in the U.S. District Court for the Northern District of Illinois of obtaining money from construction lenders for a housing project by false and fraudulent pretenses that he had obtained construction financing from GNMA and needed advances from them to pay GNMA commitment fees, when in fact he had not obtained such construction financing from GNMA and he diverted the money to himself. On April 13, 1984, he was convicted of such crime, received a suspended sentence of 5 years imprisonment, was placed on probation for that period and was ordered to make restitution of $209,000.

On January 19, 1984, Isaac pleaded guilty to an indictment in the U.S. District Court for the Central District of Illinois charging him with embezzling, stealing and converting to his own use $91,106 of funds, securities and other property belonging to a local of the United Auto Workers union. On April 13, 1984, he was convicted and fined $5,000.

On January 19, 1984, Isaac pleaded guilty to an information filed in the U.S. District Court for the Southern District of Ohio charging him with the knowing misuse of $117,515 in rents and other funds derived from a Cincinnati, Ohio, apartment project covered by a mortgage insured by the Department of Housing and Urban Development (HUD), for purposes other than to meet actual and necessary expenses of the apartment project. On April 13, 1984, the court entered a judgment of conviction, and imposed a 3-year suspended sentence and 5-years probation for this crime.

Defendant now contends that, even though GNMA did not rely upon these subsequent guilty pleas and convictions of financial crimes as grounds for terminating STI's status as a financial servicer and intermediary between mortgagors and security owners under GNMA's Mortgage Backed Securities Program, they now provide independently sufficient grounds for

GNMA's actions as a matter of law irrespective of the sufficiency of the prior actual grounds.[2]

Defendant's position is based on the following provisions of GNMA's standard guaranty agreement:

Section 8.03. In addition to the events of default set forth and provided for above in this Article, GNMA, in its discretion and on its election, with notice thereof in writing directed to the Issuer, may declare as an event of default under this Agreement:

\* \* \* \* \* \*

(2) Any change with respect to the business status of the Issuer, whether or not subject to the reporting requirements of Section 5.02 above, which materially adversely affects GNMA under this Agreement, which shall constitute an event of default only as of the date of notice as aforesaid, directed to the Issuer;

\* \* \* \* \* \*

Section 8.05. On the occurrence or development of any event of default as set forth or provided above in this Article \* \* \* GNMA may, under this Section 8.05, by letter directed to the Issuer, pursuant to section 306(g) of the National Housing Act, effect and complete the extinguishment of any redemption, equitable, legal, or other right, title, or interest of the Issuer in the mortgages pooled under this Agreement, against which the guaranteed securities hereunder are issued; and with respect to such guaranteed securities, the mortgages pooled hereunder shall become the absolute property of GNMA, subject only to unsatisfied rights of the holders of such securities based on and backed by such pooled mortgages.

Section 8.06. On and after the time GNMA directs a letter of extinguishment to the Issuer as set forth and provided in Section 8.05 above, all authority and pow-

---

**2.** Defendant does not explain how a decision based on these subsequent facts would affect its counterclaim based on plaintiff's refusal to co-

operate with GNMA's takeover of plaintiff's servicing functions, records and funds prior thereto.

er of the Issuer under this Agreement, whether with respect to the securities issued hereunder or the mortgages pooled hereunder or otherwise, shall terminate and expire * * *.

Defendant argues that there is no dispute as to the fact of Isaac's convictions nor as to Isaac's relationship to the plaintiff, and that once an issuer embarks on a course of embezzlement and fraud, a change in that entity's business status materially adverse to GNMA has necessarily taken place.

 The difficulty with the defendant's position is, however, that under the applicable contract clause the "discretion" and "election" with respect to the event which GNMA "may declare as an event of default" is to be exercised by GNMA. It is well established that where a contract or regulation provides that a designated official or government agency is to exercise discretion with respect to whether a particular default warrants termination of a contract, the contractor is entitled to an exercise of judgment by that designee and that judgment may not be preempted by the court or by the Department of Justice. *Fairfield Scientific Corp. v. United States*, 222 Ct.Cl. 167, 181–82, 611 F.2d 854, 862 (1979); *Pacific Architects & Eng., Inc. v. United States*, 203 Ct.Cl. 499, 516–18, 491 F.2d 734, 744–45 (1974); *Schesinger v. United States*, 182 Ct.Cl. 571, 581–84, 390 F.2d 702, 707–09 (1968); *New York Shipbuilding Corp. v. United States*, 180 Ct.Cl. 446, 460, 385 F.2d 427, 435 (1967).

This should be all the more true where the contractor has a valuable property interest in fifteen contracts which the government seeks to extinguish without compensation and the default at issue is not in the actual performance of those contracts. Assuming that GNMA decided that plaintiff should no longer be entrusted to handle the funds of mortgagors and security holders, termination for default and extinguishment of the plaintiff's interest was not the only way in which GNMA could have protected itself against an undesirable. On the occurrence of any event of default, Section 8.04 of the contract authorizes GNMA and the issuer to "confer and negotiate with respect to remedying and correcting the default through interim moratorium or other arrangements." It could have required plaintiff to sell or transfer its interest or it could have required Mr. Isaac to sell his interest in the plaintiff corporation to a more impeccable mortgage broker. It could also have required plaintiff to put up a bond or to take some other action to protect all concerned from any possibility of defalcation. Not only was plaintiff entitled to the opportunity to urge GNMA to exercise its discretion in favor of the plaintiff generally but also in favor of these latter alternatives rather than the former.

Accordingly, defendant's motion for partial summary judgment is denied. The court will, however, entertain a motion for a suspension of proceedings for a reasonable time to allow GNMA to take such action as it deems proper with respect to the new evidence.